WILLIS JAMES PAYNE *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.*
MILDRED WILLIAMS *et al.*, Defendants and Counterplaintiffs-Appellants.—
(LEE GAMBILL, Defendant and Counterdefendant-Appellee.)

Fifth District    No. 80-1

Opinion filed November 26, 1980.

Robert W. Lewis, of Benton, for appellants.

Thomas P. Gulley, of Hart, Hart & Gulley, P. C., of Benton, for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiffs filed a suit to quiet title, contending that they are the owners in fee of the mineral estate situated in Franklin County underlying a 40-acre tract of real estate. Defendants' answer raised two affirmative defenses: (1) that the tax deeds supporting plaintiffs' claim were void as a matter of law because the parties interested in the estate at the time of the tax sales did not receive notice of the sales; and (2) that the tax deeds were procured by means of the filing of fraudulent affidavits. Defendants, with the exception of Coyne and Lee Gambill, filed a counterclaim seeking to quiet title in themselves.

Following a bench trial, judgment was entered in favor of plaintiffs on their complaint and against defendants on their counterclaim, the trial court determining that the counterclaim was barred by *laches*. Defendants appeal from this judgment and raise three issues on review: (1) whether the tax deeds are valid; (2) whether the subsequent payment of taxes cured any defects attendant to the tax deeds; and (3) whether *laches* was a bar to their counterclaim.

Evidence adduced at the hearing on the complaint and counterclaim reveals that the mineral estate in dispute originally was part of a fee simple estate acquired by M. H. Dorris by warranty deed in 1905. The parties stipulated that Dorris died on April 29, 1928, seized of the mineral estate and that previously he had conveyed the surface of the estate. Ultimately, the surface of the 40-acre tract was conveyed to the Ewing State Bank in 1928 by an administrator's deed executed by Thomas J.

Choissen, Jr., as administrator *de bonis non* of the estate of Thomas J. Choissen, Sr. The deed contained the following legal description:

"The Northwest one fourth [*sic*] of the Southwest Quarter of Section 12, Township Five (5) South, Range Three (3) East of the Third P.M., in Franklin County, Illinois, subject to a reservation of the coal, oil and gas and certain rights and privileges for mining and removing same as are contained in a warranty deed recorded at page 71 of Deed Record 170 in the office of the Recorder of Franklin, County, Illinois."

Subsequently, the east and west halves of the mineral estate were sold for nonpayment of taxes and were purchased by the Ewing State Bank at a tax sale conducted on January 9, 1946. Two tax deeds were issued to the bank by the county clerk on January 10, 1948. One deed described the premises conveyed as being the mineral estate underlying the east half of the northwest quarter of the southwest quarter of section 12, township 5 south, range 3 east, Franklin County, Illinois; and the premises described in the other deed was the west half of the northwest quarter of the southwest quarter of section 12, township 5 south, range 3 east, Franklin County, Illinois.

On April 6, 1948, less than 90 days after the issuance of the tax deeds, the bank conveyed to Willis and Jennie Payne by quitclaim deed, without reservation, the northwest quarter of the southwest quarter of section 12, township 5 south, range 3 east, Franklin County, Illinois. Willis Payne at the time of the conveyance was president of Ewing State Bank, having attained this position in 1936.

In the trial court, plaintiffs assert that they are owners of the mineral estate by virtue of their status as grantees of Willis and Jennie Payne while defendants contend that they own such estate as heirs of M. H. Dorris.

The evidence adduced at trial included a tax history of the surface and mineral estates from 1940 to 1977. Between 1940 and 1947, these estates were assessed separately, the mineral estate in the name of Dorris and the surface estate in the name of Ewing State Bank. According to Wendell Williams, supervisor of assessments of Franklin County, the severance of mineral and surface estates results in the county assessing each estate separately. The evidence establishes that prior to the tax sale, taxes on the mineral estate were last paid by the estate of Dorris in 1940. Subsequent to the quitclaim deed from Ewing State Bank to Willis and Jennie Payne, there was only one assessment for the 40-acre tract, and the assessment was in the name of Willis Payne. The evidence indicates that between 1948 and 1977, property taxes on the described land were paid by Payne.

The tax sale in 1946 resulted from the nonpayment of the taxes as-

sessed against the mineral interest in the 40-acre tract. In compliance with statutory requirements, two tax purchasers' notices were published by the bank in the Benton Evening News, a newspaper of general circulation in Franklin County. The notices were addressed to "M. H. Doris [*sic*], any unknown owners and all persons interested" and appeared in print August 26, September 2, and September 9, 1947. On January 10, 1948, C. V. Clark, cashier of the Ewing State Bank, filed two affidavits for tax deed on behalf of the bank. One affidavit referred to the sale of the east half of the mineral estate and the other to the west half. In all other respects the affidavits are identical and state:

> "[A]nd the person in whose name the same was taxed or specially assessed, upon diligent inquiry, cannot be found in the County of Franklin Illinois, and the owners of or parties interested in said land * * * or lot * * * upon diligent inquiry cannot be found in said County; that this affiant made inquiry in the vicinity of the land, and checked the public records for said County, and was unable to find any parties interested in said Real Estate."

The tax deeds were issued as a result of the representations contained in these affidavits.

Prior to the issuance of the tax deeds, Willis Payne rented the surface estate from the bank and conducted farming operations thereon. Payne or members of his family farmed the land up to the date of trial. The evidence establishes that subsequent to the tax sale, no operations were conducted on the real estate which is the subject of this controversy for the exploration or mining of coal, oil, or other minerals. Willis and Jennie Payne jointly executed an oil lease in 1972; however, no royalty payments were ever received by the Paynes and there is no indication in the record that exploration was ever undertaken by the lessee.

According to the evidence, prior to 1910, M. H. Dorris resided on South Main Street in Ewing, two houses south of the residence of C. V. Clark, who was the affiant in the affidavits filed in the tax deed proceeding. Ewing is shown by the evidence to be a village of approximately 250 inhabitants for the past 100 years and consists of a school, a bank, a post office, and a store. Clark and Dorris became good friends over the years. The men attended the same church, and Dorris banked at the Ewing State Bank, where Clark was employed. Sometime around 1910, Dorris left Ewing and moved approximately one mile to a farm located near the farm of Willis and Jennie Payne. The Paynes also attended the same church as Dorris. Willis Payne not only knew Dorris but had purchased from Dorris and his children property not related to this proceeding. Willis and Jennie Payne were well enough acquainted with Gladys Irene Whitaker, a granddaughter of Dorris, to give her and her

husband a wedding gift. During 1947, Gladys Irene Whitaker and her husband, Maurice, lived with Clark and his wife until housing could be found. Maurice was Mrs. Clark's son by a prior marriage.

In 1977, defendants, who were the heirs of M. H. Dorris, became aware of the Ewing-Northern Coal Association, which had been formed for the purpose of selling coal in township 5 south, range 3 east. They sought to become members of the association in order to option the disputed mineral interest to the Tennessee Valley Authority through the association. After certain of Dorris' heirs conversed with the coal association officials and began to compile the necessary proof of ownership of the mineral estate, defendants learned of plaintiffs' adverse claim. Further, the heirs of M. H. Dorris in 1935, after his death, conveyed real estate not involved in this dispute to Jennie Payne, wife of Willis Payne.

At the close of evidence, the trial court ruled in favor of plaintiffs, declaring them to be owners in fee of the mineral estate. The court also dismissed defendants' counterclaim on the grounds that it was barred by *laches*.

Defendants contend on appeal that the tax deeds are void as a matter of law because the bank, in obtaining the deeds, did not comply with the notice requirements governing such tax sales. Since the tax sales upon which plaintiffs' claim of ownership is based occurred in 1948, section 263 of the Revenue Act of 1939 (Ill. Rev. Stat. 1947, ch. 120, par. 744) is the controlling statutory enactment. Section 263 states in part:

> "Hereafter no purchaser * * * of any land, * * * for taxes * * * shall be entitled to a deed for lands * * * so purchased, until the following conditions have been complied with, to-wit: Such purchaser * * * shall serve or cause to be served a written or printed, * * * notice of such purchase on every person in actual possession or occupancy of such land or lot; also upon the person in whose name the same was taxed * * * if, upon diligent inquiry, he or she can be found in the county, and also upon the owners of or parties interested in said land * * * if they can upon diligent inquiry be found in the county. Such notices shall be served at least three months before the expiration of the time of the redemption on such sale."

Defendants contend that the bank, through its agents, failed to diligently inquire as to the ownership of the mineral estate and failed to provide proper notice of the tax sales. Defendants urge that had such a diligent inquiry been pursued by the bank, the bank would have learned of defendants' interest in the estate as heirs of Dorris and notified them accordingly. Moreover, due to the extensive social interaction of C. V. Clark and Willis Payne, cashier and president of the bank, respectively, with

Dorris and certain of his heirs, defendants charge that the bank's failure to notify them of the tax sales was not only inexcusable but fraudulent. We agree.

In passing upon the validity of a tax deed issued under the provisions of the Revenue Act as it existed in 1947 (Ill. Rev. Stat. 1947, ch. 120, par. 744 *et seq.*), our supreme court stated in *Shockley v. Good* (1958), 13 Ill. 2d 298, 302, 148 N.E.2d 763, 765:

> "Under the statutory procedure applicable to the issuance of this tax deed, it was the duty of the county clerk to determine administratively the factual matters giving rise to the substantive rights of parties after an annual tax sale. Since this was not a judicial determination of statutory compliance, this court, on review, has required the utmost in strict observance of form. No defect or omission in the affidavit could be supplied, regardless of what the real facts might have been (Cherin v. R. & C. Co., 11 Ill. 2d 447, 451-453.) However, in a suit to set aside a tax deed, it may be shown that an affidavit is false, although proper in form, and the tax deed may therefore be set aside, Graham v. O'Connor, 350 Ill. 36, Keeney v. Glos, 258 Ill. 555."

The tax deeds in the instant case are supported by the affidavits of C. V. Clark, which were filed on January 10, 1948, on behalf of the bank. In each affidavit Clark stated that upon diligent inquiry the person in whose name the real estate was taxed and the parties interested in said land could not be found in Franklin County, Illinois. Each affidavit also contained the following language:

> "[T]his affiant made inquiry in the vicinity of the land, and checked the public records for said County, and was unable to find any parties interested in said Real Estate."

■■ We are of the opinion that the record before us strongly belies Clark's assertion that he used due diligence in inquiring as to the names and whereabouts of persons interested in the mineral estate. Diligent inquiry has been defined under the statute as an honest, well-directed effort to ascertain the names and addresses of unknown parties interested in an estate which has been purchased at a tax sale. The inquiry must be as broad as that which a prudent man intent upon determining a fact would usually and ordinarily make. (*Shockley v. Good*; *Graham v. O'Connor* (1932), 350 Ill. 36, 182 N.E. 764.) Where a tax sale triggers an inquiry as to the ownership of real property, due diligence dictates that a thorough examination be made of the public records in the county in which the property is situated, particularly an examination of the property tax records. Such records were introduced into evidence at trial showing that the taxes were paid last in 1940 by the Dorris estate. Such

information would have apprised a diligent examiner that M. H. Dorris was deceased and would put such an examiner on notice that ownership of the estate may have passed to Dorris' heirs.

Apart from the reasonable inferences which could be drawn from an inspection of the public records, the uncontroverted evidence at trial indicates that the affiant, C. V. Clark, was personally cognizant of M. H. Dorris' death and of the names of persons interested in the mineral estate. Clark was a friend of Dorris and attended the same church. Dorris regularly transacted his banking business at the Ewing State Bank where Clark was cashier. When confronted with this evidence, we find it to be incredible that Clark would not have been aware of the loss of a friend, a member of his church congregation and a customer. Therefore, his inquiry should have focused upon Dorris' heirs. It is remarkable to note that in 1947, during the statutory redemption period pertaining to the tax sales and immediately prior to the filing of the affidavits, an heir of Dorris, his granddaughter Gladys Irene Whitaker, and her husband, Maurice, lived in the same residence with Clark and his wife, who was Maurice's mother by a prior marriage.

Despite the public tax records and despite his social interaction with Dorris and his granddaughter, Clark stated under oath that after exercising due diligence he could not locate the owners of or the parties interested in the mineral interest the bank had purchased at the tax sale and that he knew of no persons interested in the mineral estate. The record does not substantiate this statement. Not only is the affidavit untrue with respect to the assertion that due diligence was pursued in attempting to locate interested parties, the affidavit appears to be part of a calculated effort to deceive those parties genuinely interested in the estate by failing to provide notice of the tax sales in order to prevent any attempt to redeem the estate, which was destined to be conveyed to the bank president, a person who also was a close friend of Dorris and well enough acquainted with the family to give a wedding present to an heir of Dorris, Gladys Irene Whitaker. Accordingly, we hold that the tax deeds which were issued pursuant to these affidavits are void as a matter of law. *Shockley v. Good.*

Next, defendants contend that the payment of taxes and the passage of time did not cure the defective tax deeds. Plaintiffs assert, however, that the tax deeds and subsequent conveyance represent color of title which resulted in fee ownership by plaintiffs by virtue of sections 1, 6, and 7 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, pars. 1, 6, and 7) through payment of taxes and continued possession of the mineral estate for nearly 30 years by themselves and their grantors, Willis and Jennie Payne.

■■ To sustain a claim under section 6 of the Limitations Act, a party

must obtain color of title in good faith, pay the requisite property taxes for seven successive years and possess the real estate for a like period of time. In this regard, it is fundamental that tax deeds which are void as a matter of law, because they were fraudulently obtained by plaintiffs and their predecessors in interest, cannot constitute color of title with respect to plaintiffs. Further, although plaintiffs are successors in interest to the grantees of the Ewing State Bank, neither Willis and Jennie Payne nor their successors in title can establish that they were bona fide purchasers for value of the mineral interest in question. At the outset, Willis Payne was president of the Ewing State Bank when the tax deeds were obtained by the bank under the conditions disclosed by the evidence. Further, the evidence establishes that the only other conveyance which purported to transfer ownership of such mineral interest was the quitclaim deed from Willis and Jennie Payne to plaintiffs; however, the stipulation of the parties indicates that such conveyance was without consideration and that plaintiffs hold title as donees of a gift and not as purchaser for value. Therefore, it cannot be said that the grantees in such deed were bona fide purchasers for value.

■■ Further, plaintiffs' claims under section 6 of the Act have not been perfected because of the additional requirement of possession for the requisite period of time. Under the Limitations Act, nonuse or abandonment of a mineral interest will not terminate a mineral estate that has been severed from the surface estate. Once severance occurs, deeds purporting to convey the entire title do not operate as adverse possession or notice of adverse possession of the mineral estate. (*Uphoff v. Trustees of Tufts College* (1932), 351 Ill. 146, 184 N.E. 213.) When there is severance, possession of the surface, unaccompanied by acts of dominion over the minerals, does not constitute adverse possession of the mineral estate. (*Pickens v. Adams* (1955), 7 Ill. 2d 283, 131 N.E.2d 38.) Acts of dominion entail, at the very least, actual removal of the minerals and include any acts sufficient to apprise the community that the mineral estate is in the exclusive use and enjoyment of the claiming party. *Failoni v. Chicago & Northwestern Ry. Co.* (1964), 30 Ill. 2d 258, 195 N.E.2d 619; *Pickens v. Adams.*

■■■ In the instant case, a severance of the mineral and surface estates occurred when M. H. Dorris initially conveyed the surface estate but reserved the minerals. The Ewing State Bank subsequently held title to the surface estate; however, when it purported to acquire the mineral estate by the tax deeds, the estates did not merge because the tax deeds were void as a matter of law. Therefore, the bank was not capable of conveying title to the mineral estate when it quitclaimed its interest in the 40 acres to Willis and Jennie Payne. In this regard, it is impossible to consider the evidence adduced at trial without concluding that Willis

Payne was fully aware of the effort on the part of the bank to deprive defendants of notice of its purchase at the tax sale of the minerals under the real estate in question and its subsequent application for tax deeds. However, if Payne did not have personal knowledge of such fact, public records surrounding the bank's application for tax deeds, including C. V. Clark's affidavits in support of such application, would constitute constructive notice to him. Additionally, since plaintiffs are donees of Willis Payne, they are not bona fide purchasers for value of the real estate in dispute; therefore, they acquired no title to said real estate superior to that of Willis and Jennie Payne. Further, to perfect title to the mineral estate based upon the quitclaim deed, it was encumbent upon the Paynes and their grantees actually to possess the mineral estate. This they did not do. The record shows that no mineral exploration or production was ever carried out by the Paynes or by plaintiffs. The Paynes executed an oil lease in 1972, but they received no royalties on the lease and there is no evidence in the record that the lessee engaged in any oil exploration on the 40-acre tract. We are of the opinion that the execution of the lease standing alone was not sufficient to apprise the community that the mineral estate was under the exclusive use and enjoyment of the Paynes. (See *Uphoff v. Trustees of Tufts College*, where occasional acts of coal mining by the owner of the surface estate were held not to constitute possession of the mineral estate.) Their use of the 40-acre tract was limited to surface use in the form of farming operations. Plaintiffs therefore have failed to exercise the level of dominion over the minerals necessary to establish possession of the mineral estate. (*Failoni v. Chicago & Northwestern Ry. Co.; Pickens v. Adams.*) In the absence of possession of the mineral estate, plaintiffs did not perfect title to the estate by virtue of section 6 of the Limitations Act. Additionally, since plaintiffs are not bona fide purchasers for value, as donees of Willis Payne, the title they acquired would be no better than Payne's; and since Payne was aware of defendants' possible claim of title and their identity, this court would not sanction his suit to quiet title.

■■ Plaintiffs urge that the operation of section 7 of the Act results in their having acquired title to the disputed minerals. Section 7 provides that whenever a person "having color of title, made in good faith, to vacant and unoccupied land," shall pay the taxes on that land for seven successive years, he shall be deemed to be the owner of such land. Although possession of the estate is not expressly required in the statute, our supreme court has held that in order to perfect title under this section, the holder of color of title must not only pay the taxes for seven years, he must also take possession of the estate. (*Gage v. Smith* (1892), 142 Ill. 191, 31 N.E. 430; *Failoni v. Chicago & Northwestern Ry. Co.*) The court in *Failoni* was presented with a controversy virtually identical to the instant

case, and our supreme court there held that where the surface and mineral estates have been severed, possession of the estate has been treated as an additional requirement for adverse possession and that possession of the surface does not carry with it possession of the minerals. (*Failoni v. Chicago & Northwestern Ry. Co.*) Again, plaintiffs have not demonstrated actual possession of the mineral estate, and their claim of title under section 7 has not been established. For the same reason, plaintiffs have failed to perfect title based on section 1 of the Act. Section 1 requires actual possession that is visible and exclusive for 20 years before title is perfected. *Cf. Ewald v. Horenberger* (1976), 37 Ill. App. 3d 348, 345 N.E.2d 524; *Failoni v. Chicago & Northwestern Ry. Co.*; *Pickens v. Adams.*

Finally, defendants contend that it was error for the trial court to invoke the doctrine of *laches* in dismissing their counterclaim. We agree.

The elements of *laches*, or the doctrine of stale demand, are set forth in *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341, 344, as follows:

> "What facts will combine to constitute *laches* is to be determined in light of the circumstances of each case; however, it is pointed out in 19 Am. Jur., Equity, sec. 498, that a suit is held to be barred on the ground of *laches* or stale demand 'where and only where' the following facts are disclosed: (1) Conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit, [*sic*] and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred."

In the instant case, it cannot be said that defendants-counterplaintiffs had notice or knowledge of plaintiffs'-counterdefendants' conduct and the opportunity to institute a suit. Subsequent to the quitclaim deed from Ewing State Bank to Willis and Jennie Payne in 1948, there was no separate tax assessment of the surface and minerals of the real estate in question; therefore, in the absence of actual possession of the minerals as required by *Failoni v. Chicago & Northwestern Ry. Co.*, defendants-counterplaintiffs are not shown to have had notice of counterdefendants' claim of ownership of the minerals.

Further, we find the fourth element set out in *Pyle v. Ferrell* absent in the case at bar, without which a defense of *laches* cannot be maintained. It is true that almost 30 years elapsed before defendants brought their

counterclaim contesting the tax deeds and seeking to quiet title in themselves. Nevertheless, it was plaintiffs who first placed the ownership of the mineral estate in issue by initiating their quiet title action. By filing their action, plaintiffs had the burden of establishing their claim. (See *Failoni v. Chicago & Northwestern Ry. Co.*) Plaintiffs' theory of ownership rested upon the validity of the tax deeds, or in the alternative, adverse possession. As we have already noted, plaintiffs did not sustain their burden of proof and failed to establish their ownership of the mineral estate under either theory. Therefore, plaintiffs cannot be said to be injured or prejudiced as a result of defendants' claim of ownership in their counterclaim.

For the reasons stated above, we hold that the tax deeds are void as a matter of law; that possession of the surface estate by the Paynes and plaintiffs did not constitute adverse possession of the mineral estate; and that any payment of taxes by them did not perfect in them title to the mineral estate. We further hold that the equitable defense of *laches* does not serve as a bar to defendants' counterclaim.

Since the parties stipulated that M. H. Dorris died seized of the mineral estate and that defendants are heirs of Dorris, the record title holder of the estate, we hereby vest title to the mineral estate in fee simple in defendants according to their respective interests as heirs of M. H. Dorris.

Section 270 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 751) provides that any order of court setting aside a tax deed or restoring the owner of real estate to possession shall provide that the claimant shall pay to the party holding such tax deed certain taxes, interest, and costs; therefore, this cause must be remanded to the trial court for assessment of such charges.

For the foregoing reasons, we reverse the judgment of the circuit court of Franklin County and remand this cause for a determination of the taxes and statutory costs which are due and owing plaintiffs pursuant to section 270 of the Revenue Act of 1939 as a result of our decision.

Reversed and remanded.

JONES, P. J., and SPOMER, J., concur.