807 N.E.2d 1042 (2004)
347 Ill. App.3d 769
283 Ill.Dec. 201
In re Application of the COUNTY TREASURER, for Judgment and Order of Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes and/or Special Assessment for the Years 1994 and Prior Years (Midwest Real Estate Investment Company, Petitioner; Homeside Lending Inc., Ramiro Hernandez and Jose Alvarado, Petitioners-Appellants,
v.
Midwest Real Estate Investment Company, Respondent-Appellee).
No. 1-02-1667.
Appellate Court of Illinois, First District, First Division.
March 29, 2004.
Rehearing Denied April 30, 2004.
*1045 Slutzky & Blumenthal, Rodney C. Slutzky and Jeffrey S. Blumenthal, Chicago, for Appellants.
Miller Shakman & Hamilton, Arthur W. Friedman, Chicago, for Appellee.
Justice McNULTY delivered the opinion of the court:
The trial court granted Midwest Real Estate Investment Company a tax deed to property Jose Alvarado's family occupied. Jose, who had received no notice of the tax deed proceedings, filed a petition for vacation of the tax deed under the standards stated in section 22-45 of the Property Tax Code (35 ILCS 200/25-45 (West 2000)). The trial court denied the petition, holding that Jose did not have an "other recorded interest" in the property within the meaning of the Property Tax Code.
We hold that any interest sufficient to require notice under sections 22-10 and 22-15 of the Property Tax Code (35 ILCS 200/22-10, 22-15 (West 2000)) can qualify as an "other recorded interest," if the tax purchaser can discover the interest by reasonable inference from properly recorded instruments reflected in the public record of the title. Because Midwest could have reasonably inferred Jose's interest from the properly recorded mortgage, Jose presented valid grounds for vacating the tax *1046 deed. We reverse the decision of the trial court and remand for further proceedings.

BACKGROUND
In August 1995 Herminia Alvarado, with the help of her cousin, Ramiro Hernandez, purchased a house in Chicago. She and Ramiro borrowed $124,693 for the purchase from CTX Mortgage Company. CTX sold the mortgage to BancBoston Mortgage Corporation. Herminia properly recorded title and BancBoston recorded its mortgage.
The mortgage on its face noted that Herminia had married Jose and Ramiro had married Severa Hernandez, but Jose and Severa did not share ownership of the property. To ensure enforceability of the mortgage against all interests in the property, both Jose and Severa signed the mortgage. Under Jose's signature the document stated: "Jose Alvarado signs as borrower for the sole purpose of waiving homestead rights." A similar legend explained Severa's signature.
BancBoston promised to apply all payments from the Alvarados first to the mortgage insurance premium and second to any taxes and other insurance before taking any part of the payment as interest or to retire the principal. Cook County received all taxes charged for 1995 and for all the years the Alvarados occupied the property, but taxes for 1994 went unpaid. In 1996 BancBoston changed its name to HomeSide Lending Inc.
Midwest purchased the property in 1996 at a tax sale for unpaid 1994 property taxes. Midwest paid $948.71 for the property. In 1998 Midwest filed a petition for a tax deed to the property. Midwest obtained summons addressed to BancBoston, Herminia, Ramiro, and two other named occupants of the property.
The sheriff certified service of the summonses, including one personally served on Ramiro at the property. Midwest addressed no summons to Jose or Severa. The sheriff served all the summonses between November 30, 1998, and December 2, 1998. On December 24, 1998, the clerk of court mailed summonses to each person Midwest named. Each summons included a notice advising that the county had sold the property for delinquent taxes and the redemption period would expire on March 11, 1999. No one redeemed the property in time.
In April 1999 Midwest moved for issuance of the tax deed. In the motion Midwest specified: "All notices required by law to be given have been given * * * and [Midwest] has complied with all of the provisions of law entitling it to a Tax Deed."
At an ex parte hearing in June 1999 Midwest's attorney told the court that the two owners and two other persons already served occupied the property. He did not mention Jose. Although he informed the court about the mortgage, did not put a copy of the mortgage into evidence.
The court granted Midwest's motion for an order directing the county clerk to issue a tax deed. The court expressly found that "all persons and parties entitled thereto have' been duly served with notice," and that Midwest "exercised due diligence in attempting to ascertain the identity and location of all parties entitled to notice."
In November 1999 Midwest moved for an order for possession of the property. Midwest alleged that it had "made a demand for possession on the parties in possession of the real estate who have * * * refused to vacate."
Following an urgent phone call, Home-Side in November 1999 filed its petition to *1047 vacate the tax deed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000)). Jose and Ramiro joined HomeSide's petition in December 2000.
An officer of HomeSide admitted, in an affidavit, that HomeSide's legal department received notice of the tax deed petition, addressed to BancBoston, in December 1998. HomeSide's logs also indicated the tax petition had been forwarded to the tax department. The tax department, which had sole responsibility for investigating and handling claims involving delinquent taxes and tax deed sales, had no record of receiving the notice. The tax department first learned of the delinquency and sale in November 1999. HomeSide sought relief in count I of the petition.
Jose alleged in count II that he lived at the property with his family continuously from the purchase to the date of the petition, and he received no notice of the tax deed proceedings, including the sale. He sought relief as a person with a "recorded interest" in the property, within the meaning of section 22-45(4) of the Property Tax Code (35 ILCS 200/22-45(4) (West 2000)).
In count III Ramiro and Jose alleged that the Property Tax Code required mailing of notice before December 11, 1998, and the county clerk failed to mail notice until December 24, 1998. Jose also repeated his allegations that he received no notice although he lived at the property. Ramiro claimed that he, too, did not receive notice of the proceedings despite his ownership of the property. Ramiro and Jose sought relief due to fraudulent misrepresentations Midwest made to the court at the ex parte hearing in June 1999.
Ramiro separately alleged in count IV that he never received notice of the proceedings. He had never so much as set foot on the property, so the sheriff could not have served him with process there, as stated in the return of service.
At the hearing on the section 2-1401 petition, held in September 2001, Jose testified that he married Herminia 14 years before the hearing and they had three children, ranging in age from 2 years to 12 years. He lived in the house with his family ever since Herminia bought it in 1995. Ramiro never lived in the house.
Jose received no notice about taxes or the sale. He had little ability to understand English, and almost no ability to read English. Jose relied on Herminia to make all mortgage payments along with insurance and tax payments. Herminia first told him in late 2000 or early 2001 that there was a problem concerning taxes on the house, but she also told Jose that she made all the payments needed and the matter was resolved. At some time she told Jose that she had to pay rent on the house. They paid the rent on the house for more than four months.
Ramiro testified that he lived far from the property at issue. He had helped Herminia with the purchase, but he did not know why she named him as an owner of the property. He did not know why he signed the mortgage. He did not even remember if Herminia had explained why she needed his signature before he signed. He had never visited the property, although he had picked up Herminia there and dropped her off there most days over the two years when they worked for the same employer.
The trial court found that HomeSide received all requisite notices and therefore it had no grounds for relief from the judgment awarding Midwest a tax deed. The court found that Jose had no recorded interest in the property within the meaning of section 22-45(4) of the Property Tax Code, and therefore he lacked grounds for relief under count II. For both counts III *1048 and IV, the court found that petitioners failed to prove fraud within the meaning of section 22-45(3) of the Property Tax Code, and therefore they had no grounds for relief. The court also found that all three petitioners did not act with due diligence in pursuing their claims for relief. The court denied the section 2-1401 petition. Petitioners now appeal.

DISCUSSION
In general, "a determination regarding whether a section 2-1401 petition to vacate a default judgment should be granted depends on whether the allegations in the petition have adequately established the existence of a meritorious defense, due diligence in presenting the defense in the original action and due diligence in filing the section 2-1401 petition." Skrypek v. Mazzocchi 227 Ill.App.3d 1, 8, 169 Ill.Dec. 71, 590 N.E.2d 390 (1992). But "the current trend in Illinois * * * [has] been to relax the due diligence standard where necessary to prevent the unjust entry of default judgments and to effect substantial justice." Pirman v. A & M Cartage, Inc., 285 Ill.App.3d 993, 1003, 221 Ill.Dec. 81, 674 N.E.2d 874 (1996). This trend accords with the principle that "[a] petition for relief from judgment invokes the equitable powers of the trial court, which should prevent enforcement of a judgment when it would be unfair, unjust, or inequitable." Sunderland v. Portes, 324 Ill.App.3d 105, 109, 257 Ill.Dec. 625, 753 N.E.2d 1251 (2001).
"The court must consider all the circumstances of the proceedings and liberally construe the scope of relief available to prevent an unjust result. [Citation.] The court will consider whether some meritorious position exists so that vacatur of the order will not be a useless act; whether some particular hardship will result from vacating the order; and whether some reasons exist for the failure to present a defense in apt time. [Citation.] These determinations must be made within the framework of the legal philosophy that litigation should be determined on its merits if possible and according to the substantive rights of the parties." Zee Jay, Inc. v. Illinois Insurance Guaranty Fund, 194 Ill. App.3d 1098, 1102, 142 Ill.Dec. 286, 552 N.E.2d 1027 (1990).
We will not disturb a trial court's decision on a section 2-1401 petition absent an abuse of discretion. Sunderland, 324 Ill.App.3d at 109-10, 257 Ill.Dec. 625, 753 N.E.2d 1251. "An abuse of discretion occurs when the trial court acts arbitrarily or when the trial court's decision exceeds the bounds of reason and ignores established principles of law resulting in substantial prejudice." Sunderland, 324 Ill. App.3d at 110, 257 Ill.Dec. 625, 753 N.E.2d 1251. Where the trial court bases its decision on interpretation of a statute, we determine the correct construction of the statute de novo. In re Application of the County Collector for Judgment & Order of Sale Against the Lands and Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1987 & Prior Years, 278 Ill.App.3d 168, 171, 214 Ill.Dec. 969, 662 N.E.2d 535 (1996).
The Property Tax Code establishes the possible grounds for the relief petitioners seek:
"Tax deeds * * * are incontestable except by appeal from the order of the court; directing the county clerk to issue the tax deed. However, relief from such order may be had under Section 2-1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under that Section with respect to final orders and judgments in other proceedings. The grounds for relief *1049 under Section 2-1401 shall be limited to:
(1) proof that the taxes were paid prior to sale;(2) proof that the property was exempt from taxation;
(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or
(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30." 35 ILCS 200/22-45 (West 2000).
HomeSide does not contest the trial court's finding that it failed to act with due diligence. Instead it asks us to apply a relaxed standard of diligence in the interests of justice. But courts usually do not allow a party relief under section 2-1401 to avoid a judgment resulting from that party's culpable negligence. See Zee Jay, 194 Ill.App.3d at 1102, 142 Ill.Dec. 286, 552 N.E.2d 1027. Here HomeSide failed to meet its contractual duty to pay all taxes due on the property, and when it received timely notice of the tax deed proceedings it failed to deliver the notice to the department that might have responded appropriately. We see no grave injustice in the loss HomeSide faces due to its failure to meet its duties. Because we find no adequate grounds for relaxing the requirement that HomeSide show due diligence, we affirm the denial of count I of the section 2-1401 petition.
For Ramiro, too, we find no grounds for relaxing the requirement of due diligence. Ramiro testified that he helped Herminia purchase her home, but he did not elaborate. He did not know why she included his name on the deed. He never lived at the property. He apparently stands to lose little, especially because he may have a cause of action against HomeSide for any financial loss he may have suffered.
Although the court did not explain its finding that Ramiro failed to act with due diligence, the court could have relied on the sheriff's return of service as prima facie evidence that Ramiro received timely notice of the tax deed proceedings. See Four Lakes Management & Development Co. v. Brown, 129 Ill.App.3d 680, 683, 84 Ill.Dec. 803, 472 N.E.2d 1199 (1984). The trial court should not discredit the sheriff's return "unless the return has been impeached by clear and satisfactory evidence." Four Lakes, 129 Ill.App.3d at 683, 84 Ill.Dec. 803, 472 N.E.2d 1199. In Whitworth v. Morgan, 46 Ill.App.3d 292, 295, 4 Ill.Dec. 823, 360 N.E.2d 1198 (1977), the court upheld a finding that a party's selfserving testimony did not sufficiently discredit the return of service, even when testimony from the party's relatives corroborated his account. Here, the trial court heard Ramiro's testimony and apparently found that it did not constitute clear and satisfactory impeachment of the return of service.
Ramiro argues that even if he received service, his failure to respond does not show a lack of due diligence because he cannot read English. But Ramiro did not present evidence that he asked anyone to translate the notice for him. See Hernandez v. Board of Review, Department of Labor, 79 Ill.App.3d 635, 637-38, 34 Ill. Dec. 888, 398 N.E.2d 879 (1979). Because Ramiro made no effort to respond for more than a year after the notice of tax deed proceedings, we cannot say that the *1050 trial court abused its discretion by denying count IV of the petition for relief.
Midwest admits that it never attempted to serve Jose with notice of the proceedings. The trial court held that Jose did not have an "other recorded interest in the property" within the meaning of section 22-45(4) of the Property Tax Code, and therefore he had not presented sufficient grounds for vacating the order for a tax deed. We review the statutory interpretation issue de novo.
The Property Tax Code distinguishes "other recorded interest" from "recorded ownership." Thus, the plain meaning of the words indicates an intention to apply "recorded interest" more broadly, to persons other than owners of the property. See In re Application for Tax Deed, 311 Ill.App.3d 440, 443, 243 Ill.Dec. 585, 723 N.E.2d 1186 (2000). Because the Property Tax Code does not define "recorded interest," we must refer to the purposes and objectives of the statute to construe the term. Langendorf v. City of Urbana, 197 Ill.2d 100, 109, 257 Ill.Dec. 662, 754 N.E.2d 320 (2001).
"[T]he primary purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owners to pay their taxes, not to assist tax petitioners in depriving the true owners of their property." In re Application of the County Collector, 295 Ill.App.3d 703, 710, 230 Ill.Dec. 45, 692 N.E.2d 1211 (1998). The notice provisions assure that all persons with sufficient interest in the property receive appropriate notice of the tax deficiency, sale, and time for redemption. Southern Illinois Power Cooperative v. Lowery, 79 Ill.App.2d 180, 185, 224 N.E.2d 32 (1967). Sections 22-10 and 22-15 establishes that owners, trustees, lienholders, and occupants have such interests in the property. 35 ILCS 200/22-10, 22-15 (West 2000).
Section 22-45 serves competing policies of assuring merchantability of tax titles, and allowing tax delinquents to redeem whenever equitable, especially when tax purchasers would suffer no injury by permitting redemption. In re Application of County Treasurer of Du Page County, 84 Ill.App.3d 506, 509, 39 Ill.Dec. 890, 405 N.E.2d 869 (1980). Prior to enactment of section 22-45 Illinois law required tax purchasers to make diligent efforts to serve notice on all persons interested in a property. Ill.Rev.Stat.1989, ch. 120, par. 744. Various panels of the appellate court interpreted the notice requirement somewhat differently. Compare In re Application of the Cook County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985 & Petition for Tax Deed of Barnard 228 Ill.App.3d 719, 733, 170 Ill.Dec. 649, 593 N.E.2d 538 (1991); In re Application of the County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes and/or Assessments for the Year 1985 & Prior Years, 66 Ill.App.3d 437, 447-48, 23 Ill.Dec. 197, 383 N.E.2d 1224 (1978); Sorini v. Klein, 109 Ill. App.2d 309, 316, 248 N.E.2d 701 (1969); Gacki v. LaSalle National Bank, 282 Ill. App.3d 961, 964, 218 Ill.Dec. 615, 669 N.E.2d 936 (1996). The question of whether a purchaser made sufficient inquiry presented an issue of fact. In re Application of County Collector, 219 Ill.App.3d 396, 404, 162 Ill.Dec. 122, 579 N.E.2d 936 (1991). The appellate court's deference to the findings of the trier of fact allowed some inconsistency in the results of tax deed proceedings. A prospective purchaser of a tax deed faced an undesirable lack of clear guidance as to whether the deed could withstand a challenge by former owners.
*1051 The appellate court suggested a useful standard for determining whether a tax deed purchaser made sufficient efforts to notify persons interested in the property. The court in Payne v. Williams, 91 Ill.App.3d 336, 341, 414 N.E.2d 836, 46 Ill.Dec. 783, (1980), held:
"Where a tax sale triggers an inquiry as to the ownership of real property, due diligence dictates that a thorough examination be made of the public records in the county in which the property is situated, particularly an examination of the property tax records."In Payne, "[s]uch records were introduced into evidence at trial showing that the taxes were paid last in 1940 by the Dorris estate. Such information would have apprised a diligent examiner that M. H. Dorris was deceased and would put such an examiner on notice that ownership of the estate may have passed to Dorris' heirs." Payne, 91 Ill.App.3d at 341-42. Thus, under Payne, a tax purchaser has not acted with minimal diligence if he fails to make a reasonable effort to notify all persons whose interests in the property are reasonably inferrible from public records of the property's ownership.
In re Application of Ward, 311 Ill. App.3d 314, 243 Ill.Dec. 692, 724 N.E.2d 1, (2000), applied a similar principle. In that case a recorded plat of a subdivision indicated that the property at issue was a park held for benefit of the homeowners nearby, including the petitioner. Although the owner of record received notice of tax deed proceedings, the petitioner did not. Following award of the tax deed, the petitioner moved to vacate the deed pursuant to section 2-1401. The trial court denied the petition.
The appellate court first held that the petitioner qualified as a party interested in the property under section 22-15 of the Property Tax Code because title to the property showed an intent to donate the property for the benefit of the nearby homeowners. Ward, 311 Ill.App.3d at 318-20, 243 Ill.Dec. 692, 724 N.E.2d 1. The court added:
"We also believe that the recording of the plat and the declaration of covenants brought the homeowners' interests in the property within the scope of section 22-45 of the Code to the extent that it limits the ground for contesting a tax deed to a failure to notify those with a recorded interest. * * * It is also apparent that petitioner could have reasonably ascertained the identities and addresses of the homeowners simply by visiting their homes in the subdivision and by consulting public tax records." Ward, 311 Ill.App.3d at 320, 243 Ill.Dec. 692, 724 N.E.2d 1.
From Payne and Ward we extract the principle that any interest sufficient to trigger the duty to give notice under sections 22-10 and 22-15 may qualify as a "recorded interest," within the meaning of section 22-45. If the tax purchaser can infer the interest from public records, the interest is a "recorded interest" within the meaning of section 22-45. See In re Application of the County Treasurer & ex officio County Collector of Cook County for Order of Judgment & Sale Against Real Estate Returned Delinquent for the Year 1985, 216 Ill.App.3d 162, 169-70, 159 Ill.Dec. 586, 576 N.E.2d 255, (1991).
Section 22-10 requires service of notice on all occupants of the property, and an occupant whose spouse owns the property is entitled to separate notice of tax deed proceedings. In re Application for Tax Deed, 285 Ill.App.3d 930, 934, 675 N.E.2d 285, 221 Ill.Dec. 378 (1997). Thus, Jose had a sufficient interest to require notice under section 22-10. The public record of the title showed that Herminia. *1052 and Ramiro owned the property, subject to a mortgage held by BancBoston. The recorded mortgage showed that Herminia had married Jose. One could reasonably infer from the mortgage that Jose, if he lived with his family, occupied the property. Because Midwest could reasonably infer Jose's interest from the public records, and Midwest made no effort to notify Jose, Jose has presented sufficient grounds for relief under section 22-45 (4) of the Property Tax Code.
The trial court held that Jose did not act with due diligence in bringing the section 2-1401 petition. The court did not discuss equitable considerations that can warrant relaxation of the diligence requirement. Midwest stood to lose nothing if the trial court granted the 2-1401 petition. See 35 ILCS 200/22-80 (West 2000). Midwest claims that Jose stands to lose nothing if this court affirms denial of the petition, because Jose and Herminia have a cause of action against HomeSide for breach of the contractual duty to pay taxes. That cause of action may eventually reimburse Herminia for her financial loss, but it will not provide Jose and his family with a place to live while they pursue that cause of action. Jose and his family may face great difficulties if the trial court grants Midwest's motion for an order of possession of the property.
The trial court should have considered Jose's lack of fluency in English in determining whether he acted with sufficient diligence. In Trojan v. Marquette National Bank, 88 Ill.App.2d 428, 232 N.E.2d 160 (1967), the defendants petitioned for relief from a default judgment. The plaintiff showed that the defendants had received all requisite notices of proceedings. But the appellate court reversed the denial of the petition to vacate the judgment. The appellate court emphasized equitable considerations and extenuating circumstances that explained the defendants' failure to respond:
"The defendants are of foreign origin, so totally unversed in our language that their counsel could only communicate with them through an interpreter. While it has been argued at numerous junctures that defendants had been fully apprised of their rights and liabilities in regard to this matter, we are not at all convinced that defendants thereby comprehended the serious ramifications of their inaction." Trojan, 88 Ill.App.2d at 439, 232 N.E.2d 160.
Similarly, in Hernandez, 79 Ill.App.3d at 637-38, 34 Ill.Dec. 888, 398 N.E.2d 879, the appellate court found that the petitioner had a reasonable excuse for failing to respond to a notice, because the petitioner took the notice to a friend to translate, and the translator did not translate the part of the notice that required a response by a given time. "Due diligence requires that the section 2-1401 petitioner have a reasonable excuse for failing to act within the appropriate time." Johnson v. Wal-Mart Stores, Inc., 324 Ill.App.3d 543, 547, 258 Ill.Dec. 124, 755 N.E.2d (2001). Sometimes language difficulties provide just such a reasonable excuse.
Jose relied on Herminia for all dealings in English. Herminia told Jose that there was a problem with taxes on the house, and later she began paying rent to someone. They paid the rent, for at least four months, some time before the hearing held in September 2001. Jose did not seek any relief from the judgment directing issuance of the tax deed until December 2000, 18 months after the court issued the deed. The record does not establish whether he paid rent before joining the petition to vacate the judgment.
When Herminia told Jose that she had taken care of the tax problem, he accepted her answer. Like the defendants in Trojan, *1053 Jose may not have fully understood the implications of his actions when he paid rent.
In light of the grounds for relaxing the requirement of due diligence here, we hold that the trial court committed manifest error when it found that Jose failed to act with sufficient diligence in joining the section 2-1401 petition. The trial court misinterpreted section 22-45 and held Jose to a standard of diligence that did not comport with the demands of equity. Accordingly, we hold that the trial court abused its discretion by dismissing count II of the section 2-1401 petition.
Both Jose and Ramiro brought count III of the petition, alleging that Midwest procured the tax deed by fraud and deception. The concerns for due diligence that applied to Ramiro's claim in count IV apply equally to his claim in count III. We cannot say that the trial court abused its discretion by denying Ramiro relief under count III of the complaint.
But the issues of equity that governed our appraisal of Jose's diligence in count II apply equally to count III. The court committed manifest error by finding that Jose failed to act with the diligence required for his section 2-1401 petition.
To support the claim for fraud, Jose alleged in count III that the mortgage on its face reflected his marriage to Herminia. Midwest told the court that it served notice on all persons entitled to notice under section 22-15. The court, relying on Midwest's representations, granted the order for issuance of a tax deed.
Tax deed proceedings involve the government in taking the property of private owners of real estate. Due process concerns demand a special interpretation of the fraud requirement of section 22-45(3). See In re Tax Deed Petition of Thomas, 225 Ill.App.3d 861, 863, 167 Ill. Dec. 368, 587 N.E.2d 637 (1992). In Thomas the tax purchaser searched the property records and discovered the petitioner's mortgage on the property. But the purchaser, misreading the record, believed that the record showed release of the mortgage. The purchaser did not notify the petitioner of the tax sale or the redemption period. The trial court, finding no fraud, denied the petition to vacate the tax deed.
The appellate court reversed, holding:
"[U]nder these facts fraud should be deemed to exist as a matter of law. * * * In this case, the mistake was made by the respondent or her agent. If we are going to allow one applying for a tax deed to claim mistake in checking titles as justification for failing to give statutory notice, we are going to invite actual fraud. The burden on tax-deed purchasers to give notice to parties interested in the premises is correctly placed on those who will benefit from the tax deed. They should not be able to avoid statutory requirements by relying on their own mistakes." Thomas, 225 Ill.App.3d at 863-64, 167 Ill.Dec. 368, 587 N.E.2d 637.
The failure to inform the court of any facts that might change the court's ruling can amount to fraud for purposes of vacating tax deeds. In re Application of County Treasurer, 67 Ill.App.3d 122, 131-32, 23 Ill.Dec. 822, 384 N.E.2d 729 (1978) (hereinafter, Gerus). Where the public record concerning a property "contains information to ascertain the truth concerning persons to be notified and the purchaser fails to notice it, there is sufficient evidence of bad faith to warrant concluding the deed was procured by fraud." Gerus, 67 Ill.App.3d at 132, 23 Ill.Dec. 822, 384 N.E.2d 729. See also In re Application of *1054 County Collector, 278 Ill.App.3d at 174, 214 Ill.Dec. 969, 662 N.E.2d 535.
Here, the public records showed the mortgage and the mortgage reflected Herminia's marriage to Jose. Midwest did not inform the court of Jose's potential interest as a probable occupant of the property; instead Midwest told the court it had already served notice on all occupants. Midwest may have mistakenly overlooked Jose's interest as reflected in the mortgage, or Midwest may have deliberately decided not to inform the court of Jose's signature on the mortgage. Assuming the failure to notice Jose's interest resulted from oversight, we follow Thomas and construe the mistake as fraud. Assuming Midwest knew of Jose's interest and decided not to inform the court of that interest, we find that Midwest's acts constitute fraud under Gerus. The trial court erred by finding that Jose failed to show fraud and that he failed to act with due diligence. We reverse the decision to dismiss Jose's claim for relief in count III of the petition.
The trial court refused do grant HomeSide and Ramiro relief from the judgment for issueance of a tax deed in part because the court found that neither HomeSide nor Ramiro acted with due diligence. We find no abuse of discretion in the denial of those claims for relief. But the decision to deny Jose's claims for relief in cournt II of the petition rested on an overly narrow interpretation of the grounds for relief permitted by section 22-45 (4) of the Property Tax Code. The court found that Jose acted without due diligence as an alternate grounds for denying him relief. But the court did not acknowledge applicable equitable concerns or the reasonability of Jose's acts in light of his difficulties with financial dealings conducted in English. The trial court abused its discretion by dismissiong count II of the section 2-1401 petition. The trial court also interpreted the fraud requirement of section 22-45(3) overly narrowly. Jose sufficiently showed fraud with evidence that Midwest represented that it served all persons entitled to notice, when it had failed to serve Jose, whose interest in the property Midwest could have reasonably inferred from the mortgage. Accordingly, we affirm the dismissal of counts I and IV of the petition, and of count III insofar as it presents Ramiro's claim for relief. We reverse the dismissal of count II and of count III insofar as it presents Jose's claim for relief. We remand for further proceedings consistent with this opinion.
Affirmed in part and reversed in part; cause remanded.
O'MALLEY, J.J. and McBRIDE, J., concur.