*In re* APPLICATION OF THE COUNTY COLLECTOR FOR JUDGMENT AND SALE AGAINST LANDS AND LOTS RETURNED DELINQUENT FOR NONPAYMENT OF GENERAL TAXES AND/OR ASSESSMENTS FOR THE YEAR 1985 AND PRIOR YEARS (Keyway Investments, Inc., Petitioner-Appellant; Minority Enterprise Real Estate Investment Trust, Objector-Appellee).

First District (1st Division) No. 1—90—1016

Opinion filed August 26, 1991.—Rehearing denied October 22, 1991.

Steven R. Dobrofsky, of Chicago, for appellant.

Robert L. Tucker & Associates, of Chicago (Robert L. Tucker, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

After purchasing delinquent 1985 real estate taxes for four condominium units, commonly known as two garages, Keyway Investments, Inc. (Keyway), petitioned the trial court for a tax deed. The trial court ruled that Keyway did not meet its burden of diligent inquiry and denied the petition. Keyway appeals.

On January 15, 1987, Keyway's assignor purchased delinquent real estate taxes for four condominium units. On May 8, 1989, Keyway petitioned the court for a tax deed, even though the redemption period would not expire until September 22, 1989. The four condominium units are two, two-car brick garages. The garages are common elements of a registered and recorded condominium. The garages are detached from the condominium's residential units and located behind the residential units at 5115-17 South University in Chicago, Illinois. The delinquent tax bills were all addressed to Thelma Bowles at 5117 South University Avenue in Chicago, Illinois.

Based upon the record, the following is a brief summary of filed documents or records relating to the condominium: On May 8, 1969, the residential declaration of condominium, which was dated July 19, 1966, was recorded with the Cook County recorder of deeds. The declaration of condominium indicated that the legal title holder was the Exchange National Bank of Chicago as trustee under trust number 19676. On July 28, 1972, the Exchange National Bank of Chicago, by trustee's deed, conveyed all of its rights, title and interest in the condominium property to the Minority Enterprise Realty Investment Trust (MERIT). The conveyance was recorded with the Cook County

recorder of deeds and indicated that MERIT's address was 6856 South Martin Luther King Drive in Chicago, Illinois.

On May 11, 1989, Keyway caused the clerk of the circuit court to send, via certified mail, notice that the garage units were sold for delinquent taxes, that the redemption period would expire on September 22, 1989, and that the matter was set for hearing on September 29, 1989. The notice was mailed to Thelma Bowles at 5117 S. University in Chicago, "The Exchange National Bank of Chicago as Trustee number 19676," the "La Salle National Bank as Successor Trustee to Exchange National Bank of Chicago number 19676," Federal Savings & Loan Insurance Corp., United States Attorney General Justice Department, United States District Attorney Northern District of Illinois, MERIT trust at 6856 S. Dr. Martin L. King Dr., and 5115-17 University Condo Association at 5115 S. University in Chicago. All notices were delivered, except, MERIT's.

Furthermore, personal service was attained on the following parties: the United States District Attorney for the Northern District of Illinois, the Federal Savings & Loan Insurance Corp., the La Salle National Bank, the Exchange National Bank, Thelma Bowles, the clerk of the circuit court and the 5115 S. University Condo Association. The sheriff's office attempted to serve MERIT at 6856 S. Martin Luther King Dr. but was unable to do so, stating that MERIT was out of business.

In response to receiving the delinquent tax notice, the La Salle National Bank, as successor trustee of trust number 19676, in a May 23, 1989, correspondence stated that a land trust number 19676 did not exist.

Additionally, on June 14, 15 and 16, 1989, Keyway published a delinquent tax notice in the Chicago Daily Law Bulletin.

On September 29, 1989, Keyway petitioned the trial court for an order that would direct the county clerk to issue a tax deed.

On October 24, 1989, the trial court conducted an evidentiary hearing in connection with Keyway's petition. At the hearing, Benitta Berke testified on behalf of Keyway. Berke testified to the following: She conducted a search to ascertain the "interested parties" with respect to the garages. She ordered a printout from Chicago Title & Trust and the printout did not show any conveyances because all of the conveyances were before 1974. She went to the Cook County recorder's tract books and did a tract search. She visited the garages. She could not see inside the garages.

In particular, Berke testified: MERIT had an interest in the property. It had a "trust deed." The "trust deed" was recorded in August

1972. She ascertained MERIT's address from the "trust deed." The sheriff attempted to serve MERIT but he indicated that it was out of business. Berke attempted to locate MERIT's address from the "directory."

At the close of Berke's testimony, the court found that the period of redemption had run, that the property was not redeemed, that the required notices were given and that Keyway complied with the Revenue Act. Thereafter, *the court took the matter under advisement pending its review of the transcript.*

Subsequently, on November 22, 1989, the court recalled the case on its own motion because it reviewed the case file and wanted an explanation with respect to La Salle National Bank's May 23, 1989, correspondence, where the bank stated that a land trust number 19676 did not exist. Keyway called Berke again. Berke testified: Her search indicated that La Salle National Bank would not have a trust by that number because the trust was originally from Exchange National Bank in 1966 and, subsequently, the Exchange National Bank conveyed the property in July 1972 to MERIT. La Salle National Bank never received a trust because the *res* was not in the trust. At the time of the tax deed proceeding, Exchange National Bank never owned the property. The conveyance did not include any specific units because it conveyed the entire property.

Additionally, Berke testified that *subsequent* to the court inquiring about the La Salle National Bank correspondence, she made further inquiries to determine the whereabouts of MERIT. She went to "Haines directory," looked up 6856 South King Drive and called that address or anyone at that address to determine whether MERIT was in fact there or had been at any time. She spoke with Rita Thorne at 6856 South King Drive. In the course of the telephone call, Berke determined that 6856 South King Drive was a dentist's office and that no one knew of MERIT, but that MERIT had been in the building about 20 years ago.

Additionally, Berke testified: She had another address for MERIT which came from the section 241a notice. She cross-indexed that address to a telephone number and reached Gray Real Estate. She spoke to William Gray, who told her that it was his real estate company, that he had been at that building for over 40 years, that he had never heard of MERIT and that he had nothing to do with it. Berke also checked the telephone book and did not find a "Merit," or similar listings. She checked with the Secretary of State and the Attorney General. The condominium association was personally served and to

the best of her knowledge that person was an occupant of the building.

After concluding Berke's testimony, the court asked that additional notices be provided before the court entered an order for the deed.

Subsequently, on January 12, 1990, MERIT, represented by counsel, appeared in court after receiving notice of the proceedings on or about December 8, 1989. On behalf of MERIT, Dr. Cornelius Knowles testified to the following: He is the trustee and treasurer of MERIT. MERIT acquired title by trustee deed from the Exchange National Bank. The MERIT trust is located at 701 West 111th and has been since the late 1970s. Previously, the MERIT trust was located at 526 North Michigan Avenue. Additionally, the following colloquy was exchanged between MERIT's counsel and Dr. Knowles:

"Q. *** [D]o you know *** whether or not notice was given to the Office of the Recorder of Deeds with respect to where tax bills and the forms filled out as to where tax bills were to go with respect to the property?

ATTORNEY FOR KEYWAY: Objection. Violates best evidence rule.

THE COURT: Let me take the objection under advisement. Let me see what his answer is?

Q. Do you know?

A. Yes. I filed notice with—the Recorder of Deeds at the—I believe the Collector of taxes my address as the recipient of the tax bills.

THE COURT: Objection overruled. *** He's describing personally what he did.

ATTORNEY FOR KEYWAY: What's the relevance, your Honor? The best evidence, your honor, is the document. What he says and does is not evidence whether the collector has knowledge of his whereabouts.

***

THE COURT: I can draw my own conclusions. That's an issue of weight. He is testifying as to what he did."

On cross-examination, Dr. Knowles testified that MERIT trust does not have a phone number listed at 701 West 111th Street; that in the summer of 1988 the name "MERIT trust" appeared on the tax bill and it went to his office; that before the tax bills went to his office, they went to William Gray Realty on 67th and Cottage Grove and that William Gray Realty could be located at 6551 South Cottage Grove.

Thereafter, Berke was called to testify again. She testified: She telephoned Mr. Gray on Cottage Grove to speak with "something called the William Gray Real Estate." She never spoke with anyone on the premises at 5115-17 University Avenue.

After hearing opposing counsel's arguments, the court denied Keyway's petition for the tax deed and read its order into the record. The court order stated:

"At the initial prove-up of this matter, Petitioner's witness, Benitta Berke, testified that she performed a search to locate interested parties and that the property was owned by Exchange National Bank as trustee under trust 19676. She further testified that MERIT had a trust deed to the premises and that she attempted service at 6856 South King Drive based on the documents addressed for MERIT.

She further testified as to a different address for MERIT as shown on the 241(a) notice. That Address was 6551 South Cottage Grove. But service was not attempted there.

At a subsequent prove-up called on the Court's motion, Ms. Berke testified that she made a mistake when she testified that MERIT's interest was pursuant to a trust deed. In fact, MERIT was the owner of the property pursuant to this document, not the Exchange Trust as previously testified to.

She further testified to phone contacts with the dentist's office at 6856 South King and a real estate company at 6551 South Cottage Grove that proved unsuccessful, as did attempts to locate MERIT through the offices of the Attorney General, Secretary of State.

Pursuant to the provisions of the Revenue Act, the Petitioner has the burden to establish in these proceedings diligent inquiry and effort to locate and serve owners, occupants, and parties interested during the notice serving period. In that regard, the 241a notice in this matter contained an alternative address of 6551 South Cottage Grove, but the sheriff's and clerk's notices were not directed to this location. Occupants of the spaces, of the parking spaces involved, have been neither identified nor served. Although there was no management company, the testimony does not reflect attempts to contact by mail, phone, or otherwise, or serve unit owners who are the most likely occupants or who could provide information as to who occupants of the spaces might be.

A significant title search error concerning title to the premises raises some concern as to the adequacy of the process in-

volved to determine and locate persons entitled to notification. Building owners or occupants were not contacted concerning the whereabouts of MERIT, and in this matter the owner of the premises was not personally served nor were the occupants.

For the foregoing reasons, the Court concludes the Petitioner has not met its burden of diligent inquiry and effort as to owners and occupants and the petitioned is denied."

Keyway appeals.

■ Initially, Keyway argues that the trial court erred in reversing its previous finding that Keyway complied with the requirements under the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 482 *et seq.*). Keyway's argument is meritless. In fact, at the first prove-up hearing, the trial court took the matter under advisement pending its review of the transcript. The trial court's review of the transcript was a condition precedent to a finding that Keyway complied with the Revenue Act. Contrary to Keyway's apparent assertion, the trial court did not make a final determination that Keyway complied with the Revenue Act.

Keyway also argues that the trial court erred in determining that it did not meet its burden of diligent inquiry and effort, contending that *MERIT did not introduce evidence* that the garage spaces were occupied or that a person knew the whereabouts of MERIT. As authority, Keyway cites *Wilkey v. Illinois Racing Board* (1978), 65 Ill. App. 3d 534, 381 N.E.2d 1380, for the proposition that a party's failure to introduce evidence which would conclusively settle a doubtful issue gives rise to a presumption that the evidence, if produced, would be adverse to that party. Keyway's reliance upon *Wilkey* is misplaced because Keyway, as the petitioner for a tax deed, has the burden to persuade the court that it complied with the Revenue Act and provided the appropriate notice.

■ Section 263 of the Revenue Act requires, *inter alia*, a tax purchaser or assignee to cause a sheriff to personally serve notice to the owners, occupants and parties interested in the premises that the property has been sold for delinquent taxes and that the redemption period will expire on the given date. (Ill. Rev. Stat. 1987, ch. 120, par. 744.) Additionally, section 263 provides that if any owner or party interested upon diligent inquiry and effort cannot be found and served with notice, a notice should be published three times in a newspaper within the municipality. (Ill. Rev. Stat. 1987, ch. 120, par. 744.) In short, the statute requires a tax buyer to make "diligent inquiry and effort" to find and personally serve the owner before publishing the notice. (Ill. Rev. Stat. 1987, ch. 120, par. 744; *In re Application of the*

*County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985 & Prior Years* (1991), 211 Ill. App. 3d 988, 992, 570 N.E.2d 769; *In re Application of Cook County Collector* (1981), 100 Ill. App. 3d 178, 179-80, 426 N.E.2d 947.) The tax buyer must strictly comply with the notice requirements.

■ Additionally, Keyway argues that its search to serve MERIT was diligent, contending that a diligent inquiry does not require perfection, and cites, as authority, *Village of Dolton v. First National Bank* (1957), 12 Ill. 2d 435, 147 N.E.2d 62. While it is true that a diligent inquiry does not require perfection, it is "that kind of search or investigation which a diligent [person], intent on ascertaining a fact, would usually and ordinarily make." (*In re Application of County Treasurer* (1975), 32 Ill. App. 3d 161, 165, 336 N.E.2d 167.) The trial court determined that Keyway's inquiry did not meet its burden of diligence and effort. Because, generally, diligence is a question of fact (*In re Application of the County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985 & Prior Years* (1991), 211 Ill. App. 3d 988, 996, 570 N.E.2d 769), the trial court's determination will only be reversed if it is against the manifest weight of the evidence. We find that the trial court's determination is amply supported by the record as the trial court specified. While Keyway emphasizes all of the various tactics taken to locate MERIT, it ignored or overlooked several important known facts.

In particular, Keyway's lack of diligence with respect to noticing an alternative address for MERIT in the section 241a notice (Ill. Rev. Stat. 1987, ch. 120, par. 722a). Section 241a of the Revenue Act (Ill. Rev. Stat. 1987, ch. 120, par. 722a) provides, in pertinent part, that "[a] purchaser or assignee *** shall deliver to the county clerk *** a notice to be given to the party in whose name the taxes are last assessed as shown by the most recent tax collector's warrant books." Clearly by Berke's own admission, the section 241a notice contained the 6551 South Cottage Grove address for MERIT and apparently it was a matter of public record that MERIT was the last assessee, but the sheriff's and clerk's notices were not directed to this location. A mere telephone call to the Cottage Grove address with the assurance that the individual had no "interest" in the property does not comply with section 263 of the Revenue Act. Furthermore, as required by section 263 of the Revenue Act, occupants of the garage spaces were neither identified nor served. Berke's testimony does not reflect attempts to contact by mail, phone, or otherwise, or serve unit owners

who are the most likely occupants or who could provide information as to garages' occupants or where MERIT might be located. Moreover, Berke's admitted error in her title search indicates inadequate diligence and effort to determine and locate persons entitled to notification.

■ Keyway then argues that the trial court erred in denying Keyway an order to grant a tax deed, contending that MERIT did not have standing to appear and object to the tax deed proceedings because the trust was not capable of holding title to the property. The trial court did not make a determination or hear any evidence with respect to MERIT's legal status or ability to hold title. This issue is irrelevant to the nature of the proceedings. The issue in the trial court is the same as on appeal, *i.e.*, whether Keyway complied with the notice procedures in the Revenue Act, rather than whether the conveyance to MERIT complied with the applicable law. It is evident to this court that MERIT has standing in these tax deed proceedings.

■ Further, Keyway argues that the trial court committed prejudicial error when it allowed Dr. Knowles to testify that he submitted a change of address to the collector of taxes, contending that it violates the best evidence rule, under which inferior evidence may be barred. The trial court did not commit prejudicial error for three reasons. First, the trial court correctly noted that Dr. Knowles testified about his own actions. Second, Keyway was not prejudiced by Dr. Knowles' testimony because the court's determination with respect to Keyway's lack of diligence was also based upon Keyway's failure to serve 6551 South Cottage Grove and Keyway's failure to identify and serve the garages' and residential units' owners or occupants. Third, in a bench proceeding, the trial court is presumed to have considered only competent evidence and the admission of incompetent evidence is harmless. *Magnone v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 170, 178, 466 N.E.2d 1261.

■ Keyway finally argues that the trial court "exceeded [its] special statutory jurisdiction" when it required Keyway to provide additional notice. We disagree. The trial court had jurisdiction to assure that Keyway complied with the Revenue Act. Specifically, section 266 of the Revenue Act provides that the court shall insist on strict compliance with the requirements contained in section 263, *e.g.*, the notice provisions. (Ill. Rev. Stat. 1987, ch. 120, par. 747.) We do not find that the trial court exceeded its authority because under these circumstances the court was concerned with the title search's adequacy. Thus, the court ordered Keyway to provide notice again to assure that any interested parties' due process rights were protected. "The

State must act reasonably before depriving a person of a property interest ***." (*Rosewell v. Chicago Title & Trust Co.* (1984), 99 Ill. 2d 407, 412, 459 N.E.2d 966.) " 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (*Rosewell,* 99 Ill. 2d at 411, quoting *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314-15, 94 L. Ed. 2d 865, 873, 70 S. Ct. 652, 657.) Without the additional notice, the trial court determined that because of the title search errors, the interested parties were not afforded an opportunity to object. The trial court did not exceed its jurisdiction.

For the reasons stated above, the order denying Keyway's petition for a tax deed is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.