2021 IL App (1st) 192386-U

SIXTH DIVISION
September 17, 2021

Nos. 1-19-2386 & 1-20-0393 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

---

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER | ) | Appeal from the |
| AND *EX OFFICIO* COUNTY COLLECTOR OF | ) | Circuit Court of |
| COOK COUNTY, ILLINOIS, For Judgment and Order | ) | Cook County |
| of Sale Against Real Estate Rendered Delinquent for | ) | |
| Nonpayment of General Taxes for the Year 2012 | ) | No. 16 COTD 5256 |
| | ) | |
| (Bradley L. Freas, Petitioner-Appellant/Cross-Appellee; | ) | The Honorable |
| Wheeler Financial Inc, Respondent-Appellee/Cross- | ) | James R. Carroll, |
| Appellant). | ) | Judge, presiding. |

---

PRESIDING JUSTICE PIERCE delivered the judgment of the court.
Justice Coghlan concurred in the judgment.
Justice Walker dissented.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's denial of Freas's section 2-1401 petition to vacate a tax deed where, on cross-motions for summary judgment, the circuit court properly found Freas did not establish by clear and convincing evidence that Wheeler procured the tax deed through fraud. We also affirm the circuit court's denial of Freas's motion for sanctions and Wheeler's postjudgment petition for sanctions where the circuit court did not abuse its discretion in denying the motions.

¶ 2    This is an appeal from the circuit court's order denying Bradley L. Freas's section 2-1401 petition (735 ILCS 5/2-1401 (West 2018)) to set aside a tax deed issued to Wheeler Financial, Inc. Freas's petition asserted Wheeler fraudulently concealed that it failed to serve Freas proper notice

of the underlying tax deed proceedings. On cross-motions for summary judgment, the circuit court entered summary judgment in favor of Wheeler, denied Freas's cross-motion for partial summary judgment, denied Freas's section 2-1401 petition, and denied Freas's request for sanctions against Wheeler and its counsel. Freas filed a timely notice of appeal, which was docketed in this court as appeal no. 1-19-2386.

¶ 3    Wheeler filed a postjudgment motion for Rule 137 sanctions against Freas within 30 days of the circuit court's judgment. Wheeler also issued a Supreme Court Rule 237 notice for Freas to personally appear at the sanctions hearing. The circuit court granted Freas's motion to quash the Rule 237 notice and denied the sanctions motion after briefing and hearing argument. Within 10 days of the denial, Wheeler filed a notice of cross-appeal in appeal no. 1-19-2386. Freas filed a second notice of appeal—docketed in this court as appeal no. 1-20-0393—within 30 days of the circuit court's denial of Wheeler's sanctions motion. We consolidated the two appeals and ordered Wheeler's motion to dismiss appeal no. 1-20-0393 be taken with the case.

¶ 4    On appeal, Freas argues the circuit court erred by denying his motion for summary judgment and entering summary judgment in favor of Wheeler on his section 2-1401 petition because he presented clear evidence that Wheeler procured the tax deed through fraud. He further asserts the issuance of the tax deed violated his right to due process, and the circuit court erred by denying his motion for sanctions against Wheeler and its counsel. He also contends we lack jurisdiction over Wheeler's cross-appeal. In its cross appeal, Wheeler argues the circuit court abused its discretion by denying its motion for sanctions because Freas did not make a reasonable inquiry into the facts underlying his fraud allegations before filing his section 2-1401 petition, and further abused its discretion by quashing the Rule 237 notice to Freas to appear at the sanctions hearing.

2

¶ 5 After the parties briefed the cross-appeals, Freas filed a motion to strike a portion of Wheeler's reply in support of its cross-appeal, which we ordered taken with the case.

¶ 6 For the following reasons, we affirm the circuit court's judgment in appeal no. 1-19-2386 and dismiss appeal no. 1-20-0393 as moot. By separate order, we deny Freas's motion to strike portions of Wheeler's reply brief for the reasons explained below.

¶ 7                                    I. BACKGROUND

¶ 8                              A. The Property Tax Code

¶ 9 The Property Tax Code sets forth various requirements imposed on a tax purchaser and the county clerk with respect to notices that must be given and how they are to be delivered. Section 22-5 of the Property Tax Code (35 ILCS 200/22-5 (West 2014)) requires a tax purchaser, within 4 months and 15 days of the sale of delinquent taxes, to deliver a notice to the county clerk for forwarding "to the party whose name the taxes are last assessed as shown by the most recent tax collector's warrant books" in a statutorily prescribed form. The county clerk is directed to mail "to the addresses supplied by the purchaser or assignee, by registered or certified mail, copies of said notice to the party in whose name the taxes are last assessed by the most recent tax collector's warrant book." *Id.*

¶ 10 Section 22-10 of the Property Tax Code (*id.* § 22-10) requires a tax purchaser to give notice of the sale and the date of the expiration of the redemption period to the owners, occupants, and parties interested in the property in a statutorily prescribed form (section 22-10 redemption notice). The section 22-10 redemption notice must be given within the period of three to six months prior to the expiration of the redemption period. *Id.*

¶ 11 Section 22-15 of the Property Tax Code (*id.* § 22-15) sets forth the manner of serving notice the section 22-10 redemption notice. In relevant part, the section 22-10 redemption notice must be

published in a newspaper "as set forth in section 22-20" and served by the Sheriff "upon owners who reside on any part of the property sold by leaving a copy of the notice with those owners personally." *Id.* Notice must also be served on all other owners and parties interested in the property in the same manner of service of a summons "if upon diligent inquiry they can be found in the county." *Id.* If an owner or party interested, upon diligent inquiry, cannot be found or served with notice in the county and the person in actual occupancy and possession is a tenant, then service on the tenant is sufficient. *Id.* Of particular relevance here, if the owner or party interested, upon diligent inquiry, cannot be found or served with notice, then the sheriff "shall cause a copy of the notice to be sent by registered or certified mail, return receipt requested, to that party at his or her residence, if ascertainable." *Id.*

¶ 12    Section 22-25 of the Property Tax Code requires the purchaser to prepare and deliver to the clerk of the circuit court a notice identical to the notice required by section 22-10 "except that it shall bear the signature of the clerk instead of the name of the purchaser or assignee and shall designate the parties to whom it is mailed." *Id.* § 22-25. The clerk is required to mail the notice by certified mail with return receipt requested. *Id.* "The certificate of the clerk that he or she has mailed the notices, together with the return receipts, shall be filed in and made a part of the court record." *Id.*

¶ 13    Section 22-40 provides that, if the property owner does not redeem the taxes during the redemption period, and the tax purchaser has made all required payments, given all required notices, and complied with all legal provisions, the circuit court

> "shall so find and shall enter an order directing the county clerk *** to issue to the purchaser or his or her assignee a tax deed. The court shall insist on strict compliance with section 22-10 through 22-25. Prior to the entry of an order

directing the issuance of a tax deed, the petitioner shall furnish the court with a report of proceedings of the evidence received on the application for tax deed and the report of proceedings shall be filed and made a part of the court record." *Id* § 22-40(a).

¶ 14     The only avenues for challenging a tax deed are through an appeal or a petition to set aside the tax deed. Section 22-45 provides

"Tax deeds issued under Section 22-40 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Sections 2-1203 or 2-1401 of the Code of Civil Procedure[ ] in the same manner and to the same extent as may be had under those Sections with respect to final orders and judgments in other proceedings. The grounds for relief under Section 2-1401 shall be limited to:

(1) proof that the taxes were paid prior to sale;

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30." *Id.* § 22-45

¶ 15                                    B. The Tax Deed Proceedings

¶ 16    At the 2014 annual tax sale, Wheeler purchased delinquent 2012 real estate taxes on a residential condominium unit located at 1735 North Paulina Street, Unit 304, Chicago, Illinois (condo unit), owned by Freas. Wheeler paid $1724.15 and received a certificate of purchase. On December 5, 2014, Wheeler delivered to the county clerk a notice pursuant to section 22-5 of the Property Tax Code. The notice indicated that the redemption period would expire February 15, 2017. The redemption period was later extended to May 12, 2017.

¶ 17    In November 2016, Wheeler filed a petition for tax deed in the circuit court requesting the issuance of a tax deed if the taxes were not redeemed. Alternatively, Wheeler requested—if the circuit court found that it had not complied with the applicable provisions of the Property Tax Code—the circuit court order a sale in error and order a refund of the sale price and any subsequent paid taxes and costs.

¶ 18    On December 12, 2016,[1] Wheeler delivered a first batch of section 22-10 redemption notices to the sheriff for service. The sheriff's attempts to personally serve Freas at another address (9638 Laramie Avenue, Skokie, Illinois) and Freas and a general occupant at the condo unit with the first batch of notices were unsuccessful. On January 9, 2017, Wheeler delivered a second batch of section 22-10 redemption notices to the sheriff. The sheriff was again unsuccessful in effecting personal service on Freas at the Laramie address and Freas and a general occupant at the condo unit.

¶ 19    On June 1, 2017, Wheeler filed its application for an order directing the clerk to issue a tax deed. The application outlined the unsuccessful attempts to serve Freas and other interested parties

---

[1]Wheeler's appellate brief states that the first batch of notices were delivered to the Sheriff on December 14, 2016. In an answer to Freas's interrogatories, however, Wheeler stated that the first batch of notices were delivered on December 12, 2016.

with the section 22-10 redemption notices. The petition asserted "The Sheriff's Notice required by [section 22-10] is attached hereto as Exhibit 'E.' The Sheriff's returns of service indicate the following." The sheriff's actual service affidavits were not attached; instead, Wheeler attached printouts from the Sheriff's Civil Process Lookup website reflecting the inability to serve Freas with the section 22-10 redemption notices. The application contained no information as to whether the sheriff attempted to serve the section 22-10 redemption notices by sending certified mail to those who had not been personally served. Also attached to the application were the certificate of purchase, a notice of extension of redemption, the section 22-5 notice, the section 22-10 take notice, and the section 22-25 notice, along with proof of publication.

¶ 20    On June 14, the clerk of the circuit court file-stamped[2] the sheriff's service affidavits reflecting that it attempted to serve Freas at the Laramie address on January 28, 2017, and Freas or a general occupant at the condo unit on February 8, 2017, but those service attempts were unsuccessful. On June 25, 2017, the clerk file-stamped a certified mail envelope addressed to Freas at the Laramie address with a postmark of February 10, 2017. The envelope was marked "unclaimed" and "return to sender not deliverable as addressed."

¶ 21    The circuit court held a hearing on July 11, 2017. Dan Kosman testified he made three inspections of the property between September 25, 2014, and December 19, 2016. He was unable to contact anyone residing at the condo unit and there was no access to the condo unit because it was a secure building. Freas's name was on the intercom, which listed the unit number. There was no answer when Kosman buzzed the intercom. Wheeler's counsel informed the circuit court that

---

[2]We use the term "file-stamped" rather than "filed" because, as discussed below, the clerk of the circuit court would file-stamp documents when it received them, but those documents would only be placed in the physical court file after the document was scanned into the electronic docket. While a document might be file-stamped on a particular date—and thus be deemed "filed" as of that date—the document might not appear in the clerk's electronic docket or in the physical court file until a later date.

a title search confirmed Freas owned the condo unit. He also informed the circuit court that he directed the sheriff to serve Freas and a generic occupant at the condo unit, but the sheriff was unable to make contact. The sheriff also attempted to serve Freas at the Laramie address, but the sheriff reported Freas had moved from that location. Counsel argued that the section 22-5 notice was mailed to Freas. He further argued that copies of the section 22-10 redemption notice and the section 22-25 notice were attached to his application. He asserted "That notice was mailed by the Clerk of the Circuit Court, and the results of those mailings should be part of the court file." He further asserted that notice had been published in the Chicago Sun-Times.

¶ 22    On July 28, 2017, the circuit court entered an order finding that (1) all persons entitled to notice had been duly served with notice of the sale and the application for a tax deed; (2) the real estate had not been redeemed within the redemption period; (3) Wheeler exercised due diligence in attempting to ascertain the identity and location of all parties entitled to notice and to serve those parties with all required notices; (4) all other taxes and special assessments that became due had been paid; and (5) the material allegations in Wheeler's petition were true and Wheeler had fully complied with the requirements for a tax deed. The circuit court therefore directed the county clerk to issue a tax deed to Wheeler. Wheeler recorded the tax deed on August 29, 2017.

¶ 23    On August 8, 2017, the clerk file-stamped sheriff's affidavits showing it attempted to serve Freas with the first batch of 22-10 redemption notices on three occasions between January 9, 2017, and January 25, 2017, at the condo unit, but was unsuccessful. A service affidavit also reflected an attempt to serve Freas at the Laramie address on January 15, 2017, but the occupants informed the sheriff that Freas was a previous owner. A handwritten notation on the service affidavit for Freas at the Laramie address reflected "CM" for "certified mail."[3]

---

[3]As will be discussed below, the sheriff's notation "CM" means certified mail needs to be sent; it does not mean that certified mail has been sent.

¶ 24    On October 15, 2017, the circuit court entered an order of possession in favor of Wheeler and stayed possession until November 8, 2017.

¶ 25                              C. Section 2-1401 Proceedings

¶ 26    On November 15, 2017, Freas filed a petition to vacate the circuit court's order directing the clerk to issue the tax deed pursuant to section 2-1401 of the Code and 22-45(3) of the Property Tax Code (35 ILCS 200/22-45(3) (West 2016)), along with a motion to stay possession. The 2-1401 petition made the following allegations. Wheeler obtained the tax deed through fraud because Wheeler told the circuit court at the prove-up hearing "that proof of the certified mailings could be found in the court file," but "Wheeler knew the Sheriff had failed to serve the mandatory certified mail notice required when unsuccessful service attempts occur, and concealed this fact from the Court." At all times, Freas resided at the condo unit and received mail there and received mail at his parents' house. Wheeler could have ascertained Freas's true mailing address "through a basic Accurint search" but failed to do so. Wheeler placed its section 22-10 redemption notices with the sheriff for service just 23 days before the redemption period notice serving window expired. Freas did not receive any notice of the tax sale or his redemption rights. The sheriff did not send any notices to Freas through certified mail, and because of when the notices were placed with the sheriff, there was insufficient time to serve the notices by certified mail. Freas only learned of the proceedings on November 2, 2017, after someone slipped a copy of the order of possession under the door of the condo unit. Freas argued that the tax deed should be set aside pursuant to section 22-45(3) of the Property Tax Code due to Wheeler's fraud or deception in procuring the tax deed. Further, Freas alleged his due process rights were violated because Wheeler did not fully attempt to provide the notice required by the Property Tax Code.

¶ 27    The circuit court denied Wheeler's combined motion for judgment on the pleadings and to dismiss the petition, and Wheeler answered the petition. Freas's motion for partial summary judgment was entered and continued during discovery. After conducting discovery, Freas filed an amended motion for partial summary judgment.

¶ 28    Freas's amended motion for partial summary judgment made the following arguments. There were no genuine issues of material fact that the sheriff did not send the mandatory certified mail notices after the unsuccessful attempts at personal service, and Wheeler falsely informed the circuit court at the tax deed prove up that it had complied with all notice provisions. It was undisputed the sheriff did not send any notices by certified mail. Wheeler "only checked the court file and Circuit Court's electronic records twice in May 2017, and never looked back into the file for the required Sheriff Affidavit proofs." The second batch of sheriff's service affidavits were in the court file on June 14, 2017, and the first batch of service affidavits were in the court file on August 8, 2017. Wheeler did not attempt to procure the second batch of service affidavits in advance of the July 11, 2017, prove up hearing. Wheeler admitted that it only checked the court file and electronic records in May 2017. Wheeler knew at the time of the prove up that Freas had not been served with any notices of the tax deed proceedings, failed to inform the circuit court that the service affidavits were not in the court file, and failed to inform the circuit court that it did not know whether there was any compliance with section 22-15. Wheeler's failure to inform the circuit court of facts that might change the court's ruling amounted to fraud, which would permit the circuit court to vacate the issuance of the tax deed. Wheeler had a duty to know whether the sheriff sent notices by certified mail. Wheeler committed fraud in the procurement of the tax deed when it represented to the circuit court that it complied with the notice requirements when in fact there had not been any attempts to serve Wheeler with a copy of the notices by certified mail.

¶ 29    Freas's motion also requested sanctions against Wheeler and its counsel for allegedly "withholding documents from a public official." The motion alleged that, beginning in April 2018, Wheeler and its counsel engaged in a series of emails with Colin J. Luce, the director of the Cook County Sheriff's Office civil process and returns division, in which Luce informed them that the only way to verify that certified mail had been sent was to check the court file for returned green cards or service affidavits with a handwritten certified mail number. According to Freas, "Wheeler's counsel obtained the Sheriff's Affidavits from an employee at the Circuit Clerk's Office who printed the Sheriff Affidavits from Court View because they were not in physically in [*sic*] the court file." Wheeler's counsel then "withheld" the service affidavits from Luce prior to Luce signing a certificate concluding that certified mail was sent to Freas at the condo unit because the sheriff's office billed Wheeler an $8 fee, which is the amount the sheriff's office charges for sending certified mail. Luce retracted this assertion during his deposition. Freas also argued Wheeler and its counsel should be sanctioned for falsely stating in an affidavit that neither Wheeler nor its counsel ever had any conversations with the sheriff's office requesting service affidavits to support a sale in error based on the sheriff's failure to send certified mail. Freas argued Wheeler's counsel attested in an affidavit in a different case that the sheriff never attempted service, as confirmed by a conversation counsel had with the sheriff's office.

¶ 30    Attached to Freas's motion for partial summary judgment, among other materials, was an affidavit from Luce. He averred that the sheriff's office "was not able to comply with its statutory requirement to send certified mail notice on or before February 12, 2017, after the unsuccessful service attempts, due to insufficient time and lack of manpower." There was no record proving any attempt to serve Freas or a general occupant at the condo unit by certified mail.

11

¶ 31    Wheeler's cross-motion for summary judgment argued that Freas's petition was an impermissible collateral attack on the tax deed. Freas had not demonstrated that Wheeler knew the sheriff had not served the notices by certified mail, and therefore Wheeler could not have concealed that fact from the circuit court. Wheeler provided the circuit court with all the information it had at the time it filed its application. Because Freas could not establish any misrepresentation or deception on Wheeler's part, Freas could not establish fraud. Furthermore, Wheeler had no knowledge that the sheriff failed to send the notices by certified mail and did not contribute to that failure in any way.

¶ 32    The parties briefed the cross-motions for summary judgment. After a hearing, the circuit court granted, over Freas's objection, Wheeler leave to conduct the deposition of Darice Goodwin, the chief deputy clerk of the county division at the circuit court. The parties filed additional briefs. After considering all the parties' arguments, the circuit court entered summary judgment in favor of Wheeler.

¶ 33    In a written order dated November 20, 2019, thecircuit court found Freas's "principal argument that Wheeler should have known that the Sheriff's Office failure [*sic*] to send required certified mail after it was unable to accomplish personal service on Freas and the generic Occupant under Section 22-10 is not properly before the Court on a Section 22-45(3) challenge" because his arguments were directed at Wheeler's alleged failure to act with due diligence. The circuit court found the record did not demonstrate that Wheeler knew of the sheriff's failure to send the notices by certified mail, and Wheeler did not make any misrepresentations to the circuit court at the prove up. Freas failed to meet his burden of showing fraud and Wheeler was entitled to summary judgment on Freas's petition.

¶ 34　Freas filed a notice of appeal from the circuit court's order on November 20, 2019, the same day that the order was entered. On November 25, 2019, the circuit court entered an order clarifying that Freas's request for sanctions was denied. Freas filed an amended notice of appeal on November 25, 2019.

¶ 35　On December 16, 2019, Wheeler filed a motion for Rule 137 sanctions against Freas and his counsel. The motion alleged Freas's petition contained numerous false allegations and no reasonable investigation had been made into the factual basis for those allegations prior to filing the petition. After briefing, Wheeler served Freas with a Rule 237 notice to appear, produce documents, and testify as an adverse witness at the scheduled hearing on the motion for sanctions. Freas moved to quash the notice, as Wheeler had not requested an evidentiary hearing. On February 11, 2020, the circuit court denied Wheeler's sanctions motion and quashed the Rule 237 notice.

¶ 36　Wheeler filed a notice of cross-appeal on February 14, 2020, under appeal no. 1-19-2386. On February 24, 2020, Freas filed a notice of appeal, docketed as appeal no. 1-20-0393, identifying the same orders appealed in no. 1-19-2386.

¶ 37　　　　　　　　　　　　II. JURISDICTION

¶ 38　Before turning to the merits, we clarify a few jurisdictional matters reflected in the briefing of these appeals. As noted above, Freas filed two notices of appeal and Wheeler filed a notice of cross-appeal. Freas's November 20, 2019, notice of appeal (which was amended on November 25, 2019), docketed in this court as appeal no. 1-19-2386, seeks reversal of the circuit court's judgment denying his 2-1401 petition and other orders entered during those proceedings. Freas's notice of appeal in no. 1-19-2386 was filed before Wheeler filed its motion for sanctions in the circuit court. After the circuit court denied Wheeler's motion for sanctions, Wheeler filed a notice of cross-

appeal on February 14, 2020, in appeal no. 1-19-2386. On February 24, 2020, Freas filed another notice of appeal, docketed as appeal no. 1-20-0393, from the same orders identified in appeal no. 1-19-2386, but also identifying that it was filed within 30 days of the denial of Freas's sanctions motion. In his appellate brief, Freas argues we lack jurisdiction over Wheeler's cross-appeal because it was filed more than 30 days after the judgment denying Freas's 2-1401 petition.

¶ 39    We find that Freas's notice of appeal in no. 1-19-2386 conferred this court with jurisdiction over his appeal pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016), and due to the circuit court's inclusion of a Rule 304(a) finding, his notice of appeal became effective upon its filing. Wheeler timely filed a notice of appeal from the denial of its sanctions motions because the notice of appeal was filed within 30 days of the circuit court's denial of its motion. Regardless of whether Wheeler properly styled its notice of appeal as a cross-appeal, our jurisdiction over Wheeler's appeal is secure. Freas was not required to file a new notice of appeal upon the denial of Wheeler's sanctions motion because its notice of appeal in no. 1-19-2386 was already effective, and appeal no. 1-20-0393 seeks the exact same relief requested in no. 1-19-2386. The notice of appeal in 1-20-0393 is moot and will be dismissed as such.

¶ 40                              A. Supreme Court Rule 304(b)(3)

¶ 41    Freas argues Rule 304(a) is the basis of our jurisdiction over appeal no. 1-19-2386 because the circuit court's order denying the 2-1401 petition included language stating, "there is no just reason for delay of enforcement in this matter as this is a final and appealable order." We find that Rule 304(b)(3) is the basis of our jurisdiction, and we explain the significance of the circuit court's Rule 304(a) finding.

¶ 42    The circuit court's order denying Freas's 2-1401 petition was a final and appealable order pursuant to Rule 304(b)(3), which provides that a judgment denying relief prayed in a section 2-

1401 petition is an appealable order. Ill. S. Ct. R. 304(b)(3). The circuit court entered summary judgment in favor of Wheeler, denied Freas's motion for partial summary judgment, and denied Freas's section 2-1401 petition. The circuit court's order terminated Freas's attempt to vacate the underlying issuance of the tax deed through the section 2-1401 proceedings. Therefore, the circuit court's order denying the relief requested in Freas's 2-1401 petition was immediately appealable under Rule 304(b)(3).

¶ 43    It is true that the circuit court's order included language stating, "there is no just reason for delay of enforcement in this matter as this is a final and appealable order." The circuit court's inclusion of Rule 304(a) language on an otherwise final and appealable order is superfluous except for a limited purpose recognized by our supreme court. Ordinarily, a final judgment is not appealable until all the claims are resolved, or the circuit court makes a Rule 304(a) finding with respect to some of the disposed claims. Usually, a Rule 137 claim filed within 30 days of the final judgment renders the judgment unappealable until the disposition of the sanctions claim, and a notice of appeal filed before a timely Rule 137 claim is considered premature. But in *Niccum v. Botti, Marinaccio, DeSalvo & Tamerling, Ltd.*, 182 Ill. 2d 6, 9 (1998), our supreme court held "a notice of appeal filed from a final order including a Rule 304(a) finding—though unnecessary to render the order appealable—allows the appellate court to retain jurisdiction even where a subsequent motion for sanctions is filed and is pending in the trial court."

¶ 44    Here, the circuit court's inclusion of a Rule 304(a) finding on an otherwise final and appealable order permitted this court to retain jurisdiction over Freas's appeal even though Wheeler filed a timely Rule 137 sanctions claim in the circuit court. This procedural quirk caused some minor confusion among the parties: Freas, out of an abundance of caution, filed a second notice of appeal in no. 1-20-0393 after Wheeler filed its notice of cross appeal from the circuit

court's denial of Wheeler's sanctions claim, and then asked this court which notice of appeal conferred jurisdiction. We now definitively state that the notice of appeal docketed as no. 1-19-2386 conferred this court with jurisdiction over the circuit court's denial of Freas's 2-1401 petition.

¶ 45                         B. We Have Jurisdiction Over Wheeler's Cross Appeal

¶ 46    Next, we address Freas's argument that we lack jurisdiction over Wheeler's cross-appeal. Freas argues that Wheeler did not file a notice of appeal within 30 days of the circuit court's judgment denying Freas's section 2-1401 petition, rendering Wheeler's notice of cross-appeal untimely. Freas's argument makes little sense. No aspect of the circuit court's judgment on the 2-1401 petition was adverse to Wheeler, and thus there was nothing for Wheeler to appeal at that time.

¶ 47    Wheeler filed its sanctions motion within 30 days of the circuit court's judgment denying Freas's section 2-1401 petition. Ill. S. Ct. R. 137(b) (eff. Jan. 1, 2018) ("Motions brought pursuant to this rule must be filed within 30 days of the entry of final judgment ***."). A timely-filed Rule 137 motion is a "claim" in the cause of action with which it is connected. *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 340 (2001). Here, while the circuit court had disposed of the 2-1401 petition and made a Rule 304(a) finding, Wheeler's Rule 137 was properly before the circuit court. The circuit court denied Wheeler's motion for sanctions on February 11, 2020. Wheeler timely filed its notice of appeal on February 14, 2020.

¶ 48    Furthermore, to the extent Freas argues Wheeler's cross-appeal is not a proper cross-appeal because it was not filed within 10 days of Freas's notice of appeal, the styling of Wheeler's notice of appeal does not affect our jurisdiction. The filing of a timely notice of appeal is the only jurisdictional step required to initiate an appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Any misnomer

on Wheeler's notice of appeal is harmless, and we have jurisdiction to consider Wheeler's appeal from the denial of its sanctions claim.

¶ 49                                    C. Appeal No. 1-20-0393 is Moot

¶ 50    Finally, we find Freas's notice of appeal in appeal no. 1-20-0393 is moot because, as we explained, his notice of appeal in no 1-19-2386 vested this court with jurisdiction to review the denial of his 2-1401 petition. Freas's notices of appeal in nos. 1-19-2386 and 1-20-0393 seek the identical relief, and appeal no. 1-20-0393 is redundant because we could not give Freas any relief in appeal no. 1-20-0393 that he could not get in appeal no. 1-19-2386. Therefore appeal no. 1-20-0393 is moot and must be dismissed.

¶ 51    In sum, Rule 304(b)(3) provides the basis for our jurisdiction over Freas's appeal in no. 1-19-2386, we have jurisdiction over Wheeler's cross-appeal, and appeal no. 1-20-0393 is dismissed as moot.

¶ 52                                    III. ANALYSIS

¶ 53                                    A. Freas's Appeal

¶ 54                                    1. Fraud

¶ 55    On appeal, Freas argues the circuit court erred by denying his motion for partial summary judgment and entering summary judgment in favor of Wheeler because he presented clear and convincing evidence of fraud.

¶ 56    Section 2-1401 provides a mechanism for seeking relief from a final judgment more than 30 days after its entry, provided the petition is brought (with some exceptions not relevant here) within two years of the judgment. 735 ILCS 5/2-1401(a), (c) (West 2018). Section 22-45 of the Property Tax Code provides that a property owner may challenge the issuance of a tax deed through a section 2-1401 petition on four specified grounds, including "proof of clear and

17

convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee ***." 35 ILCS 200/22-45(3) (West 2016). Here, Freas brought his petition alleging Wheeler obtained the tax deed through fraud**.** In proceedings under section 22-45(3) of the Property Tax Code, the question is not whether the circuit court made errors in ordering the issuance of the tax deed; the question is whether the tax deed petitioner procured the tax deed through fraud.

¶ 57 A section 2-1401 petition is essentially a complaint and is subject to the same rules governing civil proceedings. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). In section 2-1401 proceedings, the circuit court may either dismiss the petition or grant or deny the relief requested and may grant or deny the petition either on the pleadings or following a hearing. *Id.* at 9.

¶ 58 Here, the circuit court denied Freas's petition on cross-motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The purpose of summary judgment is not to try a question of fact, but rather to determine whether one exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). When the parties file cross-motions for summary judgment on the same issue, they typically agree that only a question of law is involved and invite the circuit court to decide the case based on the record before it. *Pielet v. Pielet*, 2012 IL 112064, ¶¶ 28, 30. Summary judgment may be granted on cross-motions for summary judgment where it is clear that all material facts are before the court, the issues are defined, and the parties agree that only a question of law is involved. *Haberer v. Village of Sauget*, 158 Ill. App. 3d 313, 317 (1987) (citing *Allen v. Meyer*, 14 Ill. 2d 284, 292 (1958)). We review the circuit court's

entry of summary judgment *de novo*. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15.

¶ 59 Freas makes the following arguments on appeal. Wheeler submitted a false application for a tax deed because Wheeler knew Freas owned the condo unit, and the sheriff was unable to make contact with Freas while attempting to personally serve the section 22-10 redemption notice. Wheeler only checked the circuit court clerk's file twice before filing its application for the issuance of a tax deed, but the file did not contain any affidavits of service. It was only after Wheeler filed its application for the issuance of a tax deed that the sheriff filed returns of service with the circuit court clerk reflecting unsuccessful attempts to personally serve Freas at the condo unit on February 8, 2017, and at the Laramie address on January 28, 2017. The returns of service for the Laramie address had a handwritten notation "CM" with no corresponding certified mail tracking number. Freas argued Wheeler also knew—because it was common knowledge among tax deed practitioners—the sheriff had failed to serve redemption notices by certified mail in many tax deed cases. Colin J. Luce submitted an affidavit attesting that the sheriff had been unable to comply with its obligation to send the notice by certified mail due to insufficient time and manpower. Service affidavits related to the first batch of notices Wheeler placed with the sheriff for service were filed with the circuit court clerk after the prove up hearing, and those returns also contained a handwritten notation "CM" without a corresponding certified mail tracking number. Therefore, Freas contends, the circuit court would not have entered an order instructing the clerk to issue a tax deed had it known the sheriff had not attempted to serve Freas with the notices by certified mail at the time of the prove up hearing. Wheeler's application for the issuance of a tax deed was false because Wheeler did not know whether the sheriff had attempted to serve Freas with notice by certified mail, and it was Wheeler's duty to know whether attempts to serve notice

had been made. Furthermore, in other cases, Wheeler and its counsel sought sale in error refunds where the sheriff failed to serve notice by certified mail.

¶ 60     Freas repeatedly argues that Wheeler's counsel and principal are two well-versed tax deed practitioners who wrote the book on tax proceedings as authors of the Illinois Institute for Continuing Legal Education's chapter on tax deed proceedings. See Jeffrey S. Blumenthal & David R. Gray, Jr., *A Guide to Tax Deed & Indemnity Fund Proceedings*, in Real Estate Taxation § 11.6 (Ill. Inst. for Cont. Legal Educ. 2012). Freas also repeatedly relies on Cook County Circuit Court Rule 10.3 governing tax deed proceedings in the circuit court, and Cook County General Administrative Order 2007-13, to argue that Wheeler's attorney's signature on the tax deed application certified that all required notices had been sent.

¶ 61     The true focus of this appeal are the requirements of section 22-45(3) of the Property Tax Code contesting a tax deed in a collateral proceeding under section 2-1401 on the basis it was procured through fraud or deception. As petitioner, it was Freas's burden to prove by clear and convincing evidence that Wheeler obtained the tax deed through fraud or deception. The circuit court granted summary judgment in favor of Wheeler based on the circuit court's finding that Freas could not meet his burden of showing by clear and convincing evidence that Wheeler procured the tax deed through fraud or deception. We find no error in the circuit court's judgment.

¶ 62     For purposes of section 22-43(3), fraud has been defined as "a wrongful intent—an act calculated to deceive." (Internal quotation marks omitted.) *In re Application of the County Treasurer of Cook County*, 92 Ill. 2d 400, 405 (1982) (hereinafter *Congua*). There, the respondent, Jocelyn Congua, purchased delinquent taxes and, at a hearing, submitted a sheriff's affidavit reflecting personal service on the petitioner, Central National Bank. *Id.* at 403. The circuit court issued the tax deed. *Id.* at 404. Central National Bank subsequently petitioned to set aside the tax

deed based on fraud. *Id.* The sheriff's deputy who purportedly served the notice testified at a deposition that he accidently served Federal National Mortgage Association with the notice intended for Central National Bank, and that his papers had gotten mixed up. *Id.* The circuit court vacated the tax deed finding the deputy's service affidavit and Congua's reliance on the affidavit was tantamount to fraud. *Id.* at 404-05. We reversed the circuit court, and the supreme court affirmed our judgment. *Id.* at 405. Our supreme court noted that Central National Bank raised no argument "that the deputy's error or the respondent's reliance upon it constitutes fraud as it has been defined by this court: 'a wrongful intent—an act calculated to deceive,' " and the court agreed that "there is no evidence of intentional deception on the part of either the deputy or [Congua]." *Id.* at 405. The court explained that "[t]he deputy's error was inadvertent; at most it was negligence," and concluded that "neither the error by the deputy in service of notice nor respondent's reliance upon the sheriff's return establishes fraud in the tax-deed proceeding." *Id.* at 408.

¶ 63    While *Congua* provides that fraud requires a wrongful intent and act calculated to deceive, this court "has more broadly defined fraud in tax deed proceedings to include '[t]he failure to inform the court of any facts that might change the court's ruling can amount to fraud for purposes of vacating tax deeds.' " *In re County Treasurer*, 2015 IL App (1st) 133693, ¶ 23 (hereinafter *TCF Bank*) (quoting *In re Application of the County Treasurer*, 347 Ill. App. 3d 769, 781 (2004) (hereinafter *HomeSide*)).

¶ 64    The more expansive definition of fraud in tax deed cases traces back to our supreme court's decision in *Keeney v. Glos*, 258 Ill. 555 (1913), where our supreme court affirmed a decision setting aside a tax deed. There, Jacob Glos purchased delinquent taxes and obtained a tax deed. *Id.* at 556. The circuit court, however, set aside the tax deed based on a finding that Glos failed to give

notice of redemption to the owner and the person in whose name taxes were assessed. *Id.* To support his application for a tax deed, Glos "made an affidavit when he took the tax deed that the premises were not taxed or assessed in the name of any person." *Id.* There was evidence, however, that the tax collector's warrant showed James. F. Keeney owned the property and had been assessed property taxes. *Id.* Glos appealed from the circuit court's decision to set aside the deed. The supreme court affirmed and explained

> "If the purchaser at a tax sale should knowingly make a false affidavit that the property was not taxed or assessed in the name of any person, it needs no argument to show that his title acquired by means of such affidavit could not have been acquired in good faith. So, having the means before his eyes of ascertaining the truth, by merely looking, in regard to a fact about which it is his duty to know, if he fails to look, he does not act in good faith. It is true that we have held that the good faith required by the statute in the creation or acquisition of color of title is a freedom from a design to defraud the person having the better title, and that the presumption of good faith will prevail until it is overcome by evidence of fraud or actual bad faith. [Citation.] Such presumption is overcome by proof that the color of title was acquired through the affidavit of the purchaser misstating a fact which it was his duty to know. Failure to ascertain the truth under the circumstances shown was equivalent to knowledge unless explained, and no explanation was attempted. It is not decided that the purchaser was bound by constructive notice, but that it was his duty to ascertain the fact when he made the affidavit. If he was excused from such duty by any circumstances not disclosed, the burden of showing such excuse was upon him." *Id.* at 557.

¶ 65     The principle in *Glos* has been applied numerous times over the years. In *Application of County Treasurer & Ex Officio County Collector of Cook County*, 67 Ill. App. 3d 122 (1978) (hereinafter *Gerus*), we affirmed the circuit court's finding that a tax deed was procured by fraud. There, Evelyn Gerus purchased delinquent taxes and petitioned for a tax deed. *Id.* at 124. At the hearing on the petition, Gerus presented Roy Huffman, a tax and title searcher, who testified to the steps he took to ascertain who was entitled to notice. *Id.* at 124-25. The circuit court issued the tax deed, but the property owner, Ronald Murray, petitioned to set aside the tax deed based on fraud. *Id.* at 125. Murray alleged that core aspects of Huffman's testimony were false, and Huffman failed to consult relevant county treasurer's assessment books to determine details about the property owner. *Id.* After a hearing, the circuit court vacated the tax deed, finding Gerus and Huffman concealed the fact that the deed to the property contained information—specifically, the name of Murray's attorney—that would have led to identifying a notice address for the owner, and failed to inform the court that subsequent tax bills for the property contained Murray's mailing address. *Id.* at 127-131. The circuit court concluded that, if it had known of the other available information, it would not have signed the tax deed. *Id.* at 130-31. We affirmed on appeal because the deed contained information that could have been used to ascertain the person to be notified, the purchaser failed to notice it, and the purchaser concealed that information from the circuit court, which was "sufficient evidence of bad faith to warrant concluding the deed was procured by fraud." *Id.* at 132.

¶ 66     In *HomeSide*, Herminia Alvarado and her cousin, Romiro Hernandez, purchased a house and granted a mortgage to BancBoston, which later changed its name to HomeSide Lending, Inc.. 347 Ill. App. 3d at 771. The borrowers on the mortgage were Herminia and Romiro; their spouses, Jose Alvarado and Severa Hernandez, respectively, signed the mortgage as borrowers for the

23

purposes of waiving homestead rights. *Id.* Midwest Real Estate Investment Company (Midwest) purchased delinquent taxes on the property and petitioned for a tax deed. *Id.* at 772. The sheriff personally served Romiro with a summons, but no summonses were directed at Jose or Severa. HomeSide, Herminia, and two other named occupants were served with summonses. *Id.* The clerk of the circuit court sent notices to HomesSide, Romiro, Herminia, and the two other occupants. *Id.* Midwest's motion for a tax deed asserted that all notices required had been given. *Id.* At the prove up hearing, Midwest mentioned the mortgage but did not enter the mortgage into evidence. *Id.* The circuit court ordered the issuance of a tax deed to Midwest. *Id.* HomeSide, Jose, and Romiro filed a 2-1401 petition to set aside the tax deed. *Id.* In relevant part, Jose alleged that Midwest made fraudulent misrepresentations to obtain the tax deed because it had not given all required notices. *Id.* at 773. The circuit court denied the petition. *Id.* at 774. On appeal, we reversed the portion of the circuit court's judgment denying Jose relief and remanded for further proceedings. Relying on our decision in *Gerus*, we found the mortgage clearly reflected that Jose was married to Herminia and Midwest did not inform the circuit court of Jose's possible interest in the property as an occupant, which amounted to fraud. *Id.* at 781-82.

¶ 67    In *TCF Bank*, Community Partners, LLC obtained a certificate of purchase for delinquent taxes and sought a tax deed for property located on South Sacramento Avenue owned by Jose and Minerva Negron. 2015 IL App (1st) 133693, ¶ 5. All the certified mail notices sent by the clerk and the sheriff directed at the Negrons sent to the Sacramento address and to an address on South Keeler Avenue were returned unclaimed. *Id.* ¶¶ 6-7. The sheriff attempted to personally serve the Negrons at both the Keeler and Sacramento addresses, but the affidavits of service reflected no contact. *Id.* ¶¶ 8-9. Attempts at personal service and certified mail service on a general occupant at the Sacramento address were also unsuccessful. *Id.* ¶ 10. After a hearing, the circuit court

directed the issuance of a tax deed to Community Partners. *Id.* ¶ 14. In relevant part, Minerva petitioned to set aside the tax deed, alleging Community Partners erroneously informed the circuit court that all interested parties had been served, and the issuance of the tax deed violated the Negrons' due process rights under the Illinois constitution because they did not receive notice. *Id.* ¶ 15. The circuit court dismissed the petition and the Negrons appealed. *Id.* ¶¶ 16-17. On appeal, they relied on *HomeSide* to argue Community Partners's attorney committed fraud by informing the circuit court during the prove up hearing that all notices had been served when in fact service was never made. *Id.* ¶ 24. We rejected that argument and distinguished *HomeSide* because at the hearing on the section 2-1401 petition, the trial judge "stated when he entered the order directing the county clerk to issue a tax deed to Community Partners he knew that [Community Partners's predecessor-in-interest] had attempted to personally serve the Negrons by certified mail, sheriff's service, and regular mail, but had not been able to actually serve them." *Id.* ¶ 26. We found that

> "the trial judge stated that he had prepped for the prove-up hearing and recalled the facts he relied on at that hearing in deciding to issue a tax deed, and he did not think there was fraud, even in the broad sense. Thus, because appellants have not raised any issues the trial court was not aware of at the time it entered the order for a tax deed, no grounds exist for finding that those facts might change the court's rulings and thus, no fraud." *Id.* ¶ 27

In other words, the Negrons failed to demonstrate that Community Partners withheld information that, had the trial judge known that information at the time of the tax deed hearing, the trial judge's decision might have been different. We also rejected the Negrons' due process challenge, which was premised on their assertion that they never actually received notice, because due process

requires notice reasonably calculated to apprise interested parties; due process requires adequate notice, not actual notice. *Id.* ¶¶ 30-42.

¶ 68    *Glos*, *Gerus*, and *HomeSide* all involved situations where the tax purchasers obtained tax deeds after representing to the circuit court that all parties entitled to notice had been given notice and those representations were inaccurate. More importantly, those cases all involved the tax purchaser's failure to sufficiently ascertain the identity of all the parties entitled to notice when that information could have been—and should have been—obtained from public sources, and the petitioner either concealed that failure from the circuit court or misrepresented that information to the circuit court. In other words, a tax deed petitioner may be found to have committed section 22-45(3) fraud where, despite public information being available that would alter its right to a tax deed, the petitioner fails to discover that information and, in turn, fails to inform the circuit court of that information. *TCF Bank* stands for the proposition that, where the circuit court is apprised of all the relevant information, there is no fraud.

¶ 69    Here, Freas cannot point to any publicly available information Wheeler had, could have obtained, or should have obtained before the prove up hearing for the issuance of a tax deed that it failed to provide to the circuit court. When Wheeler filed its application for the issuance of the tax deed, none of the sheriff's returns of service were in the circuit court clerk's file. The only information available was located on the sheriff's civil process lookup website, which contained no information about certified mailing. Wheeler attached printouts from this site to his petition. Some of the sheriff's service affidavits were filed with the circuit court clerk after the application was on file and before the prove up hearing. Those service affidavits were consistent with the information in Wheeler's petition: the sheriff had been unable to personally serve Freas with the section 22-10 redemption notice. The affidavit of nonservice on Freas at the condo unit had a

handwritten notation "CM" for "certified mail," but there was no corresponding certified mail tracking number. Luce testified at his deposition that the notation "CM" indicates that certified mail needs to be sent; it does not mean that certified mail has been sent. Luce also testified that the certified mail tracking number is supposed to be included on the affidavit but that does not always happen and "there are times where mistakes are made." Luce stated that even in this case, there were several affidavits of nonservice that did not even include the notation "CM" when that notation should have been included. At the time of the prove up hearing, the clerk of the court's file contained one unclaimed certified mailing directed to Freas at the Laramie property. Freas, however, fails to point to any evidence in the record showing Wheeler could have obtained information from the sheriff's office or the clerk's office as to whether certified mail was sent.

¶ 70    Luce further testified that, once the sheriff's office completes a return of service, the sheriff delivers it to the circuit court clerk. The sheriff's office does not retain a copy of the service affidavit and no longer has access to it. Darice Goodwin, the chief deputy clerk of the circuit court county division, testified at a deposition that in June 2017, the clerk's office used an electronic docket system, and the clerk's office scanned all documents into the system. The system did not provide information as when a document was scanned into the system; the only date reflected would be the date the document was file-stamped by the clerk of the court. Documents would not be placed into the physical file jacket before they were scanned. Anything received by the sheriff would be file-stamped and placed into categorized bins. If a document did not appear in the electronic docket, the only way to determine whether it had been filed would be to physically search through the bins. In other words, the only way to determine whether a sheriff's affidavit of service or evidence of certified mailing had been filed with the clerk of the circuit court would be look on the electronic docket or search through the bins of filed but unscanned documents.

¶ 71 The circuit court concluded, based on Luce's and Goodwin's depositions, as well as the judge's own experience, there was no evidence that Wheeler knew at the time of the prove up hearing that the sheriff had failed to send the notice by certified mail, and there was no evidence readily available to Wheeler that would have put it on notice that the notices had not been sent by certified mail. The circuit court concluded Wheeler could not have misled the circuit court because Wheeler did not have any more information than the circuit court did regarding whether the sheriff had served Freas by certified mail. Simply put, Freas could not establish that Wheeler committed fraud for the purposes of section 22-45(3) because Wheeler provided the circuit court with all the information it had and that was publicly available regarding service.

¶ 72 Freas argues the sheriff's office sent Wheeler an invoice for all the certified mail it sent on behalf of Wheeler in February 2017, and there was only one line item related to this case, which should have alerted Wheeler to the fact that the certified letter to Freas at the Laramie property was the only certified mailing. There is, however, nothing in the record showing when the invoice was delivered Wheeler, and thus there is no basis from which to infer Wheeler knew prior to the prove up hearing that the sheriff only made one attempt to serve Freas with the section 22-10 redemption notice by certified mail.

¶ 73 Here, the question is not whether Wheeler proved up its entitlement to a tax deed, and we are not asked to review either the sufficiency of Wheeler's application or whether the circuit court's decision to issue the tax deed was correct. Those issues were resolved when the circuit court entered an order finding that Wheeler's petition was sufficient and instructing the clerk to issue Wheeler a tax deed. A section 22-45(3) challenge is limited in scope to the question of whether the issuance of the tax deed resulted from the tax deed petitioner's fraudulent conduct. Freas failed to demonstrate to the circuit court that Wheeler committed some act intended to

deceive or mislead the circuit court. The record reflects that Wheeler presented the circuit court with all available information, and Freas did not establish by clear and convincing evidence that Wheeler failed to disclose information that it had or should have had that might have altered the circuit court's decision to order the issuance of the tax deed.

¶ 74                                      2. Due Process

¶ 75    Freas next argues he was denied due process because the notices given in the tax deed proceedings were inadequate. There is no dispute that the sheriff did not personally serve the section 22-10 notices on Freas and failed to send Freas the section 22-10 notices required by certified mail. Freas contends that due process "required Wheeler to provide notice reasonably calculated to apprise the owner in possession of the secured condo of the pendency of the tax deed proceeding and redemption rights."

¶ 76    Freas's argument on this point is conclusory. It also unclear whether he pursued a free-standing claim in his section 2-1401 petition based on a due process violation, or whether his fraud arguments and due process arguments are part and parcel of his challenge under section 22-43(3) of the Property Tax Code. In his appellate brief, he merely asserts that, because he was not personally served with the section 22-10 redemption notice and the sheriff did not send the notice by certified mail, his due process rights were violated. While he provides citations to caselaw, he makes no attempt to examine or explain those cases or apply the principles in those cases to the situation before us. Furthermore, he limits his argument to the section 22-10 redemption notice but makes no argument that the other notices required by the Property Tax Code—including those that are required to be sent by the clerk—were not given in this case. His failure to develop and advance a cohesive legal argument on this point results in forfeiture. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 77                                   3. Freas's Motion for Sanctions

¶ 78     Finally, Freas argues that the circuit court erred by denying his request for "Rule 1005, 219, and 137 sanctions" against Wheeler and its counsel for "withholding documents from a public official." As noted above, Freas made his request for sanctions as part of his motion for partial summary judgment. *Supra* ¶ 29. He alleged that starting in April 2018, Wheeler and its counsel exchanged email communications with Luce about how to determine whether certified mail had been sent. Freas asserted that Wheeler's counsel obtained printouts of the sheriff's service affidavits related to the attempted personal service of the section 22-10 redemption notices on Freas from the clerk's office; hardcopies of the service affidavits were not yet in the court's file. Wheeler's counsel then "withheld" the service affidavits from Luce prior to Luce signing a certificate concluding that certified mail was sent to Freas at the condo unit, an assertion that Luce retracted at his discovery deposition. Freas also argued that Wheeler and its counsel should be sanctioned for falsely stating in an affidavit that neither Wheeler nor its counsel ever had any conversations with the sheriff's office requesting service affidavits to support a sale in error based on the sheriff's failure to send certified mail. Freas argued that, in a different affidavit in a different case, Wheeler's counsel attested that the sheriff never attempted service, as confirmed by a conversation counsel had with the sheriff's office.

¶ 79     Freas's appellate brief does not set forth the standard of review for this issue, in violation of Supreme Court Rule 341(h)(3). Nor does he offer any legal discussion of the standards regarding the imposition of sanctions under section 2-1005(f) of the Code of Civil Procedure, Supreme Court Rule 219, or Rule 137. His argument on this point is entirely conclusory and disregards the general proposition that the decision to impose sanctions is within the circuit court's discretion. He offers no argument on appeal that the circuit court abused its discretion in any manner. His arguments on

30

these points are forfeited, and we discern no basis for disturbing the circuit court's judgment declining to impose sanctions.

¶ 80 We also note that, in his appellate brief, Freas asserts that one of the issues on appeal is whether the circuit court erred by allowing Wheeler to take additional discovery after the summary judgment hearing. Freas's appellate brief, however, does not advance any actual argument on this point, and it is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited ***.").

¶ 81 In sum, we affirm the circuit court's judgment denying the relief requested in Freas's section 2-1401 petition and denying Freas's request for sanctions.

¶ 82                      B. Wheeler's Cross-Appeal

¶ 83                         1. Rule 137 Sanctions

¶ 84 Wheeler first argues the circuit court abused its discretion by denying its motion for Rule 137 sanctions against Freas and his counsel. It argues Freas and his counsel alleged in the section 2-1401 petition, without any factual basis and without conducting any reasonable investigation, that Wheeler knew the sheriff failed to send the required notices by certified mail. The petition also alleged Wheeler placed the redemption notices with the sheriff with only 23 days left in the notice serving period, but Wheeler in fact placed the notices with the sheriff almost two months before the end of the notice serving period, leaving ample time to serve the notices by certified mail. Freas did not conduct any investigation, such as consulting the record or contacting the sheriff's office, to determine whether his petition's allegations were true. Furthermore, the petition alleged the return affidavits reflected only one attempt to serve Freas at the condo unit on February 8, 2017, when in fact the record contained service affidavits reflecting at least two attempts to serve Freas at the condo unit. Freas also wrongly claimed Wheeler could have known Freas was

not served by certified mail where only one certified mail envelope was in the circuit court's docket as of June 26, 2017; while the document was file stamped June 26, 2017, there was no evidence as to when that document was scanned into the circuit court's electronic docket.

¶ 85    Rule 137(a) requires that all pleadings, motions, and other documents must be signed, and the signature of a party or the party's attorney

> "constitutes a certificate by [them] that [they have] read the pleading, motion or other document; that to the best of [their] knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."
>
> Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

¶ 86    Rule 137 "is designed to discourage frivolous filings, not to punish parties for making losing arguments." *Lake Environmental, Inc. v. Arnold*, 2015 IL 118100, ¶ 15. Rule 137 permits the imposition of sanctions when the rule is violated but does not require it. *Id.* "The decision whether to impose sanctions under Rule 137 is committed to the sound discretion of the circuit judge, and that decision will not be overturned unless it represents an abuse of discretion." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998).

¶ 87    We find the circuit court did not abuse its discretion by denying Wheeler's motion for sanctions. Wheeler's motion for Rule 137 sanctions was briefed in the circuit court and the court heard argument. After considering the parties' arguments, the circuit court explained that it "must ultimately look at the facts known at the time of the filing of the [2-1401 petition] back in November of 2017." The circuit court found Freas "provided a sufficient objective basis to avoid

sanctions. Specifically, the petitioner performed a sufficient review of the court file, [Wheeler's] past actions, and analysis of the case law under the Property Tax Code." The circuit court noted that the sheriff's office "in serving the process" and the circuit court clerk's "actions in maintaining the records were less than stellar, and because of that during this litigation, no one fact can be specifically determined as to the timing of certain activities." Not all the documents that ultimately appeared in the electronic docket were easily available for examination at the time of the parties' various filings. This was not uncommon in the circuit court's experience during that time period. The circuit court denied Freas's section 2-1401 petition but did not "feel that [Freas's] conduct reaches the level of frivolous pleading," and Freas clearly had "a proper purpose and motive for filing his 2-1401 [petition], an effort to stop the loss of his residence." The circuit court concluded that sanctions were inappropriate "under the facts and law ***."

¶ 88    In its appellate brief, Wheeler does little more than rehash the arguments it made in the circuit court. It does not contest any of the circuit court's conclusions or make any showing that the circuit court's thoughtful decision to deny sanctions amounted to an abuse of discretion. The circuit court clearly articulated that, at the time of Freas's petition, the state and condition of the available circuit court clerk's file was "less than stellar," but ultimately concluded the petition was not filed for an improper purpose. We find no basis from which to disturb the circuit court's judgment.

¶ 89                                    2. Rule 237 Notice

¶ 90    Wheeler argues that the circuit court abused its discretion by quashing the notice it sent to Freas to appear at the sanctions hearing. Wheeler insists that the circuit court should have heard Freas's testimony regarding the extent of his pre-petition inquiry into the factual basis for his fraud allegations. Wheeler asserts, without citation to authority, it was "entitled" to examine Freas.

¶ 91     Wheeler's argument is nothing more than a preference denied. Nothing in the record demonstrates Wheeler requested an evidentiary hearing on its sanctions motion. The circuit court found at the hearing on the sanctions motion that Freas's testimony was unnecessary because the circuit court judge "heard this case for the last multiple years, is very familiar with the facts and the evidence and the arguments. So there is no reason for a hearing to take evidence." The circuit court is not obligated to hear evidence on a sanctions motion. *Williams Montgomery & John Ltd v. Broaddus*, 2017 IL App (1st) 161063, ¶ 45. This is particularly true where Wheeler did not request an evidentiary hearing. The circuit court did not abuse its discretion by finding that the pleadings and other evidence in the record were sufficient to make a ruling. We affirm the circuit court's judgment denying Wheeler's sanctions motion.

¶ 92                                  C. Freas's Motion to Strike

¶ 93     After the parties briefed the cross-appeals, Freas filed a motion to strike a portion of Wheeler's reply in support of its cross-appeal, and Wheeler filed a response. Specifically, Freas argues

> "Pages 19-25 of Wheeler's cross-reply brief are outside of its cross-appeal and include impermissible argument relating to tax petitioners' fraud, inappropriate reply to a case Freas distinguished in his reply brief, and improper argument that Wheeler waived in its response brief, argument about Wheeler violating Freas' procedural due process right to have notice be attempted on him, the court lacking jurisdiction over Wheeler's untimely cross-appeal, and the trial court abusing its discretion in denying Freas' sanction motions against Wheeler."

¶ 94     Upon review of Wheeler's reply brief, we agree that certain arguments are directed at Freas's appeal rather than raised in support of its cross-appeal. In response to the motion to strike,

Wheeler argues it was merely identifying several allegedly "false and misleading statements of both fact and law" to highlight that Freas made and continues to make sanctionable arguments. We disagree with Wheeler that its arguments are proper; its arguments are directed at the substantive issues in Freas's appeal, which is not permitted. By rule, a reply brief is "confined strictly to replying to arguments presented in the brief of appellee." Ill. S. Ct. R. 341(j) (eff. Oct. 1, 2020). By including argument directed at the issues raised in Freas's appeal, Wheeler's reply in support of his cross-appeal exceeded the scope of its appeal. If Wheeler found something objectionable in Freas's reply brief, it could have moved for appellate sanctions. While we decline to formally strike the offending portions of Wheeler's reply, we will disregard those arguments in their entirety.

¶ 95    We do note, however, that Freas's appellate brief in support of his appeal argued we lack jurisdiction over Wheeler's cross-appeal. Technically speaking, Freas's jurisdictional argument should not have been made in his appellate brief in support of his appeal, but rather in his response brief to Wheeler's cross-appeal; the existence of Wheeler's cross-appeal had no bearing on Freas's appellate arguments directed at the portion of the circuit court's judgment adverse to him. Wheeler argues in its reply brief that we do have jurisdiction over its cross-appeal. This argument is properly placed in a reply brief and has been considered.

¶ 96    With this explanation in mind, we deny Freas's motion to strike, which is memorialized in a separate order.

¶ 97                                    IV. CONCLUSION

¶ 98    For the foregoing reasons, the judgment of the circuit court is affirmed in all respects.

¶ 99    Appeal no. 1-19-2386, affirmed.

¶ 100   Appeal no. 1-20-0393, dismissed.

¶ 101   JUSTICE WALKER, dissenting:

¶ 102   I respectfully dissent because Wheeler's attorney, an officer of the court, knew he could not prove that Freas had received notice of the redemption period at his last known address via certified mail, as required by section 22-25 of the Property Tax Code (Code) (35 ILCS 200/22-25 (West 2014)). The attorney stood silent when the court, in an *ex parte* proceeding, reviewed Wheeler's petition and erroneously concluded that Wheeler proved the sheriff had served notice on Freas via certified mail pursuant to the requirements for a tax deed.

¶ 103   Furthermore, Wheeler's attorney, "as an officer of the court, owed a duty to the court to be honest and forthright in all dealings with the court." *Semmens v. Semmens*, 77 Ill. App. 3d 936, 940 (1979). By failing to make the court aware of the lack of proof that Freas received notice at his last known address by certified mail, the attorney breached his duty to the court. "Fraud has been defined as acts, omissions, and concealments based upon a breach of a legal or equitable duty, trust, or confidence." *Id.* "Intentional concealment of a material fact is the equivalent of a false statement of a material fact. *** Where a person has a duty to speak, his failure to disclose material information constitutes fraudulent concealment." *City of Chicago v. American National Bank & Trust Co.*, 233 Ill. App. 3d 1031, 1036 (1992). "The failure to inform the court of any facts that might change the court's ruling can amount to fraud for purposes of vacating tax deeds." *In re County Treasurer*, 347 Ill. App. 3d 769, 781 (2004).

¶ 104   Wheeler "was keenly aware of the problems with its *** notice, [and] it failed to remind the trial court of those problems when it appeared before the court to obtain an order for the issuance of the tax deed, and that it represented in several pleadings that it had complied with the notice requirements under the law." *In re Application of the County Treasurer & Ex Officio County Collector,* 2013 IL App (3d) 120999, ¶ 25. In the context of the proceeding for a tax deed, the

36

omission by Wheeler's attorney constitutes fraud within the meaning of section 22-45(3) of the Code. 35 ILCS 200/22-45(3) (West 2014).

¶ 105 The majority has lost sight of the purpose of the Code's provisions for tax deeds. "[T]he tax sales provisions of the Revenue Act are designed not to assist tax petitioners in taking property away from owners, but to coerce tax delinquent owners to pay their taxes." *In re Application of the County Treasurer & Ex Officio County Collector of Cook County*, 213 Ill. App. 3d 535, 539 (1991). Here, despite Freas's willingness to pay his delinquent taxes, the majority gifts to Wheeler a windfall by finding that Freas "forfeit an estate of great worth for delinquency in paying a tax that is a minute fraction of the property's value." *Albertson v. Leca*, 447 A.2d 383, 388 (R.I. 1982). If the court voided the tax deed, Wheeler would suffer no loss. The Code requires repayment to Wheeler of the amount it paid in delinquent taxes, plus generous compensation for the time value of its funds. See 35 ILCS 200/22-80 (West 2014); *In re Application for Tax Deed*, 311 Ill. App. 3d 440, 446 (2000).

¶ 106 The majority's misconstruction of section 22-45(3) will encourage parties seeking similar windfalls to commit similar fraud upon the court in tax deed proceedings. I would not invite fraud into any court proceedings. Hence, I would reverse and vacate the trial court's orders and order Freas to pay section 22-80(b) payment to Wheeler. Accordingly, I respectfully dissent.